**WIRTH LIMITED, Plaintiff,**

v.

**UNITED STATES, Defendant,**

and

**Bethlehem Steel Corporation; U.S. Steel Group, a Unit of USX Corporation, Defendant–Intervenors.**

Slip Op. 98–40.
Court No. 97–05–00714.

United States Court of
International Trade.

April 3, 1998.

Sharretts, Paley, Carter & Blauvelt, P.C., (Ned H. Marshak and Beatrice A. Brickell), New York, NY, for plaintiff.

Frank W. Hunger, Assistant Attorney General of the United States; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Lucius B. Lau); Linda S. Chang, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of Counsel, for defendant.

Skadden, Arps, Slate, Meagher & Flom LLP (Robert E. Lighthizer and John J. Mangan), Washington, DC, for defendant-intervenors.

## OPINION

CARMAN, Chief Judge:

Wirth Limited ("Wirth"), an importer of steel "profile slabs" produced in Brazil by Companhia Siderurgica de Tubarao ("CST"), challenges an unpublished scope determination issued by the United States Department of Commerce ("Commerce") finding CST's profile slabs are within the class or kind of merchandise covered by antidumping and countervailing duty orders on certain cut-to-length carbon steel plate from Brazil. *See Final Scope Ruling–Antidumping and Countervailing Duty Orders on Certain Cut-to–Length Carbon Steel Plate From Brazil–Request by Wirth Limited for a Ruling on Profile Slab* (Dep't Comm. Apr. 2, 1997) [hereinafter *"Final Scope Ruling"*]. Plaintiff moves for judgment on the agency record pursuant to U.S. CIT R. 56.2, contending Commerce's *Final Scope Ruling* is not supported by substantial evidence on the record and is not otherwise in accordance with law. Plaintiff also challenges Commerce's determination to apply its *Final Scope Ruling* to, and the United States Customs Service's ("Customs") ability to assess interest against, profile slabs entered into the United States before Commerce initiated its scope inquiry.

Defendant and defendant-intervenors oppose plaintiff's motion, contending Commerce's *Final Scope Ruling* should be sustained by this Court. Defendant and defendant-intervenors also argue Commerce appropriately applied its *Final*

*Scope Ruling* to profile slabs entered before the scope inquiry was initiated. Finally, defendant and defendant-intervenors maintain this Court should not address Customs' authority to assess interest on profile slabs entered before Commerce initiated its scope inquiry due to plaintiff's failure to exhaust its administrative remedies. In addition to raising these arguments, defendant-intervenors have submitted a consent motion for oral argument in this matter. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c) (1994), and for the reasons that follow denies plaintiff's Motion for Judgment Upon the Agency Record.

### BACKGROUND

On July 9, 1993, Commerce published its final affirmative determinations in antidumping and countervailing duty investigations on cut-to-length carbon steel plate from Brazil. *See Final Affirmative Countervailing Duty Determinations: Certain Steel Products From Brazil,* 58 Fed.Reg. 37,295 (Dep't Comm.1993); *Final Determinations of Sales at Less Than Fair Value: Certain Hot–Rolled Carbon Steel Flat Products, Certain Cold–Rolled Carbon Steel Flat Products, Certain Corrosion–Resistant Carbon Steel Flat Products, and Certain Cut–to–Length Carbon Steel Plate From Brazil,* 58 Fed.Reg. 37,091 (Dep't Comm.1993). These determinations defined "certain cut-to-length carbon steel plate" to include:

> hot-rolled carbon steel universal mill plates (i.e., flat-rolled products rolled on four faces or in a closed box pass, of a width exceeding 150 millimeters but not exceeding 1,250 millimeters and of a thickness of not less than 4 millimeters, not in coils and without patterns in relief), of rectangular

shape, neither clad, plated nor coated with metal, . . .; and certain hot-rolled carbon steel flat-rolled products in straight lengths, of rectangular shape, hot rolled, . . ., 4.75 millimeters or more in thickness and of a width which exceeds 150 millimeters and measures at least twice the thickness. . . . Included in these investigations are flat-rolled products of nonrectangular cross-section where such cross-section is achieved subsequent to the rolling process (i.e., products which have been "worked after rolling")—for example, products which have been bevelled or rounded at the edges.

*Notice of Final Determination of Sales at Less Than Fair Value: Certain Cold–Rolled Carbon Steel Flat Products From Argentina,* 58 Fed.Reg. 37,062, 37,064 (Dep't Comm. 1993); *Final Affirmative Countervailing Duty Determination: Certain Steel Products From Austria,* 58 Fed.Reg. 37,217, 37,225 (Dep't Comm.1993).[1] Additionally, the two determinations defined the merchandise at issue by reference to several headings within the Harmonized Tariff Schedule of the United States ("HTSUS"). While they cited various subheadings within headings 7208, and 7210 to 7212, HTSUS, the determinations specifically provided "[a]lthough the Harmonized Tariff Schedule of the United States (HTS) subheadings are provided for convenience and customs purposes, our written descriptions of the scope of these proceedings are dispositive." 58 Fed.Reg. at 37,063; *see also* 58 Fed.Reg. at 37,224. Commerce published countervailing and antidumping duty orders on cut-to-length carbon steel plate from Brazil on August 17 and August 19, 1993, respectively. *See Antidumping*

1. Commerce's final affirmative antidumping and countervailing duty determinations involving cut-to-length carbon steel plate from Brazil defined the scope of the investigations by reference to Commerce's investigation of cold-rolled carbon steel flat products from Argentina and certain steel products from Austria, respectively. See *Final Affirmative Countervailing Duty Determinations: Certain Steel Products From Brazil,* 58 Fed.Reg. 37,295, 37,296 (Dep't Comm.1993) (defining investigation's scope by reference to "the 'Scope Appendix' to the Final Affirmative Countervailing Duty Determination: Certain Steel Products from Austria[, 58 Fed.Reg. 37,217, 37,-

225 (Dep't Comm.1993)]."); *Final Determinations of Sales at Less Than Fair Value: Certain Hot–Rolled Carbon Steel Flat Products, Certain Cold–Rolled Carbon Steel Flat Products, Certain Corrosion–Resistant Carbon Steel Flat Products, and Certain Cut–to–Length Carbon Steel Plate From Brazil,* 58 Fed.Reg. 37,091, 37,092 (Dep't Comm.1993) (defining investigation's scope by reference to "Appendix I to the Final Determination of Sales at Less Than Fair Value: Certain Cold–Rolled Carbon Steel Flat Products from Argentina[, 58 Fed.Reg. 37,062, 37,064 (Dep't Comm.1993)].").

*Duty Order: Certain Cut–to–Length Carbon Steel Plate From Brazil,* 58 Fed.Reg. 44,164 (Dep't Comm.1993); *Countervailing Duty Order and Amendment to Final Affirmative Countervailing Duty Determination: Certain Steel Products From Brazil,* 58 Fed. Reg. 43,751 (Dep't Comm.1993) [hereinafter "plate orders"].[2]

The merchandise at issue in this matter is profile slab produced by CST in Brazil. CST produces profile slabs on a two-high universal rolling mill by subjecting heated ingots to initial rolling passes. Once the ingots have undergone the preliminary rolling passes, they are subjected to a process known as "hot scarfing", which removes surface imperfections from the slabs using mechanically-guided oxygen torches. Following hot scarfing, the slabs are subjected to final rolling passes, torch-cut to length, and then cooled by a slow cooling process. CST guarantees the chemical, but not mechanical, properties of the resulting profile slab. (*See* Pl.'s Br. in Supp. of Mot. for J. Upon Agency R. ("Pl.'s Br.") at 4.)

Wirth began importing CST profile slab from Brazil in 1989, and entered it under heading 7207, HTSUS, as "semifinished steel products of iron or nonalloy steel". In November 1994,[3] subsequent to Commerce's publication of the plate orders, Wirth imported a shipment of CST profile slab at the port of Detroit, entering it as a semi-finished steel product under heading 7207, HTSUS. Because heading 7207, HTSUS, was not within the scope of the plate orders, Customs did not require Wirth to deposit estimated antidumping or countervailing duties on the profile slabs at the time of entry.

On May 18, 1995, Customs officials at the port of Detroit informed Wirth they were reclassifying the CST profile slab under heading 7208, HTSUS, a heading within the scope of the plate orders. Because merchandise within the scope of outstanding antidumping and countervailing duty orders is suspended from liquidation until an administrative review can be completed, Customs' reclassification of the CST profile slab under heading 7208, HTSUS, resulted in the suspension of liquidation of Wirth's entry of CST profile slab. *See* 19 U.S.C. § 1671e(a)(3) (1994); 19 U.S.C. § 1675(a)(1) (1994).

Wirth immediately challenged Customs' reclassification of the profile slab under heading 7208, HTSUS. Wirth contacted Customs Service Headquarters, Office of Regulations and Rulings and requested a review of the reclassification. In a letter dated August 27, 1996, the Office of Regulations and Rulings informed Wirth of its determination that CST profile slab was classified properly under heading 7207, HTSUS, because the slabs did not "meet an industry standard for the close tolerances required for flat-rolled plate." (Pl.'s App., Tab 11, Ex. 1 at 5.)

On November 30, 1995, while its request for a review by the Office of Regulations and Rulings was pending, Wirth requested Commerce conduct a scope inquiry pursuant to 19 C.F.R. § 353.29 (1996) (concerning scope inquiry involving antidumping duty order) and 19 C.F.R. § 355.29 (1996) (concerning scope inquiry involving countervailing duty order). Commerce issued its preliminary determination on February 7, 1997, concluding the CST profile slab was within the scope of the antidumping and countervailing duty orders on certain cut-to-length carbon steel plate from Brazil. Following the submission of comments by Wirth, CST and domestic produc-

---

**2.** The scope of the antidumping and countervailing duty orders on cut-to-length carbon steel plate from Brazil was identical to the scope of the final determinations. *See Antidumping Duty Order: Certain Cut–to–Length Carbon Steel Plate From Brazil,* 58 Fed.Reg. 44,164 (Dep't Comm. 1993) (defining scope of order by reference to "Appendix I of the Notice of Final Determination of Sales at Less Than Fair Value: Certain Cold–Rolled Carbon Steel Flat Products from Argentina (58 FR 37062, 37064–July 9, 1993)."); *Countervailing Duty Order and Amendment to Final*

*Affirmative Countervailing Duty Determination: Certain Steel Products From Brazil,* 58 Fed.Reg. 43,751, 43,751–52 (Dep't Comm.1993).

**3.** As noted by defendant-intervenors, the exact date of entry for this shipment is not reflected in the record. (*See* Def.-Intervs.' Mem. in Opp'n to Pl.'s Mot. for J. Upon Agency R. ("Def.-Intervs.' Br.") at 4 n. 3.) Accordingly, the Court will simply refer to this entry as the November 1994 entry.

ers, Commerce issued its *Final Scope Ruling* on April 2, 1997.

In its *Final Scope Ruling,* Commerce determined that "[b]ased upon a review of the underlying record-the petition, the Department and ITC determinations and the relevant orders .... [i]t is not clear if profile slab is a hot-rolled, flat-rolled product covered by the orders." *Final Scope Ruling* at 7. Because it could not determine whether CST profile slab was within the scope of the plate orders based on its review of the petition and other relevant documents, Commerce applied the *Diversified Products*[4] criteria in order to determine whether CST's profile slab was within the scope of the plate orders. Based upon its review of the physical characteristics, ultimate use, expectations of ultimate purchasers, and channels of trade of CST's profile slabs, Commerce determined CST profile slab is of the same class or kind of merchandise as certain cut-to-length carbon steel plate and therefore falls within the scope of the plate orders.

Additionally, Commerce's *Final Scope Ruling* rejected Wirth's argument that Customs' determination CST profile slab was classifiable under heading 7207, HTSUS, was relevant to Commerce's scope inquiry. *See Final Scope Ruling* at 7 ("Commerce, not Customs, has authority to clarify the scope of AD/CVD orders and findings. Although the Department may consider the decisions of Customs, it is not obligated to follow, nor is it bound by, the classification determinations of Customs ....") (citation omitted). Commerce also concluded its *Final Scope Ruling* properly applied to the entire period of review after liquidation of CST profile slab first was suspended. *See Final Scope Ruling* at 24–25 ("It is the Department's normal practice, ... to apply a scope determination to the entire period of review (POR) during which liquidation of entries of the scope merchandise was first suspended for AD purposes, and to subsequent PORs.").

CONTENTIONS OF THE PARTIES

A. *Plaintiff*

Plaintiff raises four primary arguments in challenging Commerce's *Final Scope Ruling.* First, plaintiff contends the record established before Commerce unambiguously excludes CST profile slabs from the scope of the antidumping and countervailing duty orders on cut-to-length carbon steel plate from Brazil. Specifically, plaintiff maintains

> where pre-existing merchandise, such as profile slabs, is unambiguously excluded from an Order's scope, based on a review of the Petition, underlying DOC and [International Trade Commission] investigations, and language of the Order itself, the DOC must conclude that the merchandise does not fall within the Order's scope without conducting a *Diversified Products* analysis.

(Pl.'s Br. in Supp. of Mot. for J. Upon Agency R. ("Pl.'s Br.") at 19.) Wirth contends numerous facts in the record "conclusively establish that CST profile slabs were not encompassed within the terms of the Plate Orders." (*Id.* at 21.) Plaintiff notes that the even though the domestic producers "were aware that profile slabs were being imported from Brazil ... at least three years prior to the filing of the ... Petitions", neither profile slab nor heading 7207, HTSUS, was listed specifically in the petitions, and as a result CST's production of profile slab was not examined in the antidumping and countervailing duty investigations conducted by Commerce and the International Trade Commission ("ITC"). (*Id.*)

Second, plaintiff asserts Commerce, in concluding CST's profile slab is of the same class or kind of merchandise as flat rolled cut-to-

---

4. In *Diversified Products Corp. v. United States,* 6 CIT 155, 162, 572 F.Supp. 883, 889 (1983), this Court reviewed, and ultimately upheld, Commerce's consideration of "the general physical characteristics of the merchandise, the expectation of the ultimate purchasers, the channels of trade in which the merchandise moves, the ultimate use of the merchandise, and cost" in determining whether merchandise under review was of the "same class or kind" as merchandise ex-

plicitly within the scope of an outstanding antidumping duty order. These criteria have been codified at 19 C.F.R. §§ 353.29(i), 355.29(i), and are utilized by Commerce when an examination of the petition, initial investigations and determinations of Commerce and the ITC do not resolve definitively whether certain merchandise is within the scope of an outstanding antidumping and/or countervailing duty order.

length carbon steel plate based on its application of the *Divers'fied Products* criteria, reached a determination that is not supported by substantial evidence on the record. Wirth contends CST's profile slab is a "semi-finished" steel product which does not share the same physical characteristics, ultimate use, or expectations of ultimate purchasers as the cut-to-length carbon steel plate that was the subject of the investigations by Commerce and the ITC.

Third, plaintiff asserts Commerce's determination that its *Final Scope Ruling* can be applied to Wirth's November 1994 entry of profile slabs, resulting in the imposition of countervailing duties,[5] is contrary to law. While plaintiff concedes decisions of this Court have upheld Commerce's practice of " 'apply[ing] a scope determination to the entire period of review (POR) during which liquidation of entries of the scope merchandise was first suspended for [antidumping] purposes' ", it argues this matter raises two issues which compel a different result. (Pl.'s Br. at 42 (quoting *Final Scope Ruling* at 24–25).) Plaintiff contends that "as a matter of policy, it is grossly unfair for the DOC to penalize Wirth due to Petitioners' failure to specify that its Plate petitions encompassed profile slabs." (*Id.* at 43.) Second, plaintiff asserts that "as a matter of law, additional [countervailing] 'duties can be assessed only on entries of merchandise for which liquidation has been suspended.' " (*Id.* (quoting *Certain Electrical Conductor Aluminum Redraw Wire from Venezuela; Final Results of Countervailing Duty Administrative Review,* 56 Fed.Reg. 47,458, 47,459 (Dep't Comm.1991) (admin. review)).)

Wirth's final argument asserts that if this Court concludes the November 1994 entry of profile slabs is subject to the assessment of additional countervailing duties, Customs is barred from assessing interest on any countervailing duties due. Plaintiff notes it was never instructed to deposit estimated antidumping or countervailing duties on the November 1994 entry of profile slab, and argues the fact pattern in this matter is analogous to the facts at issue in *New Zealand Lamb Co., Inc. v. United States,* Slip Op. 97–50, 1997 WL 209165 (CIT Apr. 22, 1997), where the Court determined because Customs collected estimated countervailing duty deposits at an incorrect rate at the time of entry, plaintiff was not liable for interest on the difference between the deposited and liquidated amount of countervailing duties. Based on this Court's holding in *New Zealand Lamb,* plaintiff asserts " 'Customs cannot avail itself of any statute that will allow the imposition of interest on a retroactively assessed charge.' " (Pl.'s Br. at 46 (quoting *New Zealand Lamb,* Slip Op. 97–50, 1997 WL 209165, at *5).)

### B. *Defendant*

Defendant rejects plaintiff's contentions and argues this Court should deny plaintiff's Motion for Judgment Upon the Agency Record. Defendant asserts Commerce's determination that profile slab manufactured by CST and imported by Wirth is of the same class or kind of merchandise as the cut-to-length carbon steel plate covered by the plate orders is supported by substantial evidence on the record and otherwise in accordance with law. Defendant argues Commerce properly determined the definition of cut-to-length carbon steel plate contained in the petition, initial investigations, and determinations of Commerce and the ITC did not resolve definitively whether CST's profile slab was within the scope of the plate orders. Defendant notes that while "CST's profile slab is a hot-rolled carbon steel product of rectangular shape that meets the dimensional specifications of the plate orders," Commerce's investigation presented "conflicting data as to whether CST's profile slab is certain cut-to-length carbon steel plate as defined by the plate orders." (Def.'s Mem.

---

**5.** Because Commerce determined CST profile slab was not sold in the United States for less than fair value in an administrative review, *see Certain Cut–to–Length Carbon Steel Plate from Brazil,* 62 Fed.Reg. 18,486 (Dep't Comm.1997) (admin. review), the parties do not contest the application of Commerce's *Final Scope Ruling* to the November 1994 entry with respect to anti-dumping duties. (*See* Pl.'s Br. at 42 ("[T]he question of whether Wirth's November 1994 entry is subject to [antidumping] duties is moot."); Def.'s Br. at 39 n. 9 ("Wirth does not challenge the potential applicability of the *Final Scope Ruling* to previously-suspended merchandise subject to the antidumping duty order.").)

in Opp'n to Pl.'s Mot. for J. Upon Agency R. ("Def.'s Br.") at 18.) Based on these conflicting data, defendant contends Commerce properly applied the *Diversified Products* criteria in reaching the conclusion, supported by substantial evidence on the record and otherwise in accordance with law, that CST's profile slab is within the scope of the plate orders.

Additionally, defendant argues Commerce's decision to apply the findings of its scope determination to the entire period of review after liquidation of CST's profile slab first was suspended is in accordance with law. Defendant argues, in effect, that Customs' reclassification of the November 1994 entry of CST profile slab, under heading 7208, HTSUS, a heading clearly within the scope of the plate orders, resulted in the suspension of liquidation of the November 1994 entry, and that the suspension remained in effect until Commerce initiated its scope inquiry on January 16, 1997. Defendant maintains, because the November 1994 entry of CST profile slab was suspended from liquidation when Commerce's scope inquiry was initiated, pursuant to regulation it remained suspended from liquidation until the completion of Commerce's scope inquiry. (*See* Def.'s Br. at 37 (quoting 19 C.F.R. § 355.29(j)(1) (1994)).)

Finally, defendant maintains this Court should reject Wirth's claim that Customs may not assess interest against the November 1994 entry of CST profile slab. Defendant asserts Wirth did not raise this argument before Commerce, and accordingly, the Court should decline to rule on this issue because plaintiff failed to exhaust its administrative remedies before the agency prior to seeking judicial review.

### C. Defendant–Intervenors

Defendant–Intervenors also oppose plaintiff's Motion for Judgment Upon the Agency Record and echo many of the arguments raised by the government. Defendant–Intervenors assert Commerce properly resorted to a *Diversified Products* analysis after determining the petition and other relevant documents were not dispositive as to whether CST's profile slab was within the plate or-

ders' scope, and maintain "Wirth has provided no credible or relevant evidence that the Orders unambiguously excluded profile slabs." (Def.-Intervs.' Mem. in Opp'n to Pl.'s Mot. for J. Upon Agency R. ("Def.-Intervs.' Br.") at 24.) Additionally, defendant-intervenors maintain Commerce's *Diversified Products* analysis is supported by substantial evidence on the record, and that Commerce's applying its final scope determination to Wirth's November 1994 entry of CST profile slab, which was suspended from liquidation at the time Commerce initiated the scope inquiry, complies with the relevant regulations. Finally, defendant-intervenors argue the statutory requirement that Customs assess interest on entries made after the publication of an antidumping or countervailing duty order where insufficient estimated duties are deposited requires Customs to assess interest on Wirth's November 1994 entry of CST profile slab. (*See* Def.-Intervs.' Br. at 56 (citing 19 U.S.C. § 1677g).)

### STANDARD OF REVIEW

■ In reviewing a scope determination, this Court must sustain Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1994). "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

### DISCUSSION

Plaintiff's challenge to Commerce's *Final Scope Ruling* raises four primary issues, which the Court will address in turn.

### A. Whether Commerce Properly Resorted to Application of the Diversified Products Criteria

Plaintiff contends the record in this matter unambiguously excludes CST profile slab from the scope of the plate orders, and therefore Commerce improperly evaluated wheth-

er CST's profile slab is within the scope of the plate orders by applying the *Diversified Products* criteria. Defendant and defendant-intervenors respond Commerce properly applied the *Diversified Products* criteria after concluding the petitions and other relevant documents were ambiguous as to whether CST's profile slab was within the scope of antidumping and countervailing duty orders on cut-to-length carbon steel plate from Brazil.

■ Initially, the Court notes "[t]he Commerce Department enjoys substantial freedom to interpret and clarify its antidumping orders. But while it may interpret those orders, it may not change them." *Ericsson GE Mobile Communications, Inc. v. United States*, 60 F.3d 778, 782 (Fed.Cir.1995) (citing *Smith Corona Corp. v. United States*, 915 F.2d 683, 686 (Fed.Cir.1990)). The applicable regulations direct Commerce, in conducting a scope inquiry, to examine "[t]he descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary and the Commission." 19 C.F.R. § 353.29(i)(1) (1996) (concerning scope inquiries involving antidumping duty orders); *see also* 19 C.F.R. § 355.29(i)(1) (1996) (similar language pertaining to scope inquiries involving countervailing duty orders). As noted previously, the investigations define cut-to-length carbon steel plate to include:

> hot-rolled carbon steel universal mill plates (i.e., flat-rolled products rolled on four faces or in a closed box pass, of a width exceeding 150 millimeters but not exceeding 1,250 millimeters and of a thickness of not less than 4 millimeters, not in coils and without patterns in relief), of rectangular shape, neither clad, plated nor coated with metal, ...; and certain hot-rolled carbon steel flat-rolled products in straight lengths, of rectangular shape, hot rolled, ..., 4.75 millimeters or more in thickness and of a width which exceeds 150 millimeters and measures at least twice the thickness.... Included in these investigations are flat-rolled products of nonrectangular cross-section where such cross-section is achieved subsequent to the rolling process (i.e., products which have been "worked after rolling")—for example, products which have been bevelled or rounded at the edges.

*See, e.g., Notice of Final Determination of Sales at Less Than Fair Value: Certain Cold–Rolled Carbon Steel Flat Products From Argentina,* 58 Fed.Reg. 37,062, 37,064 (Dep't Comm.1993).

■ While plaintiff concedes that "the absence of a reference to a particular product in the Petition does not necessarily indicate that the product is not subject to an order", it argues there is no evidence the petitioners, Commerce, or the ITC "intended that profile slabs should be included in the Plate Orders." (Pl.'s Br. at 20, 23.) Wirth asserts that "Petitioners in the instant case relied *exclusively* on HTS[US] principles to describe the proposed product coverage, and did not merely reference the HTS[US] as a supplement to a more detailed narrative of the term 'cut-to-length carbon steel plate.'" (*Id.* at 25.) Plaintiff maintains petitioners' reliance on the HTSUS to define the scope of their petitions, and their failure to include heading 7207, HTSUS, indicates CST's profile slabs are unambiguously excluded from the scope of the plate orders.

The Court rejects this line of argument and finds plaintiff's contention that petitioners relied exclusively on HTSUS principles in defining the scope of their petitions is erroneous. First, the Court notes the petitions filed by defendant-intervenors provide a description of merchandise subject to investigation by reference to dimensional measurements that have no relation to HTSUS principles. *See Petition Requesting the Imposition of Antidumping Duties on Imports of Cut-to-Length Carbon Steel Plate From Brazil, reproduced* at Pl.'s App. Tab 1, Ex. 11 at 14–15 (defining cut-to-length carbon steel plate to include "flat carbon steel products of a thickness of 4.75 mm or more, not in coils, ... and whether or not coated with non-metallic coatings" and "universal mill plate, (a flat rolled product with a width exceeding 150 mm but not exceeding 1,250 mm, and a thickness of not less than 4 mm)") [hereinafter "*Antidumping Duty Petition*"]; *Petition for the Imposition of Countervailing Duties: Certain Carbon*

*Steel Flat Products From Brazil,* reproduced at Pl.'s App. Tab 1, Ex. 12 at 11–12 (same) [hereinafter *"Countervailing Duty Petition"*]. The Court notes the petitions also define the scope of covered merchandise by reference to American Iron and Steel Institute ("AISI") product categories and American Society for Testing and Materials ("ASTM") standard specification numbers. *See Antidumping Duty Petition, reproduced* at Pl.'s App. Tab 1, Ex. 11 at 10, 11; *Countervailing Duty Petition, reproduced* at Pl.'s App. Tab 1, Ex. 12 at 16, 17. Additionally, while plaintiff is correct that the petitions describe the subject merchandise by reference to several HTSUS headings, petitioners are required by regulation to include these headings. *See* 19 C.F.R. § 353.12(b)(4) (1996) (providing petitions requesting imposition of antidumping duties shall include "[a] detailed description of the merchandise that defines the requested scope of the investigation, including ... its current U.S. tariff classification number"); 19 C.F.R. § 355.12(b)(4) (1996) (similar language applying to petitions requesting imposition of countervailing duties). Based on its review of the petitions, the Court finds they contain no indication of an intent to define the scope of covered merchandise solely by reference to HTSUS principles.

Because the Court finds the petitions did not rely exclusively on HTSUS principles to define the scope of the investigations, the Court need not engage in an extended analysis to reject plaintiff's arguments that the *Final Scope Ruling* is inconsistent with Commerce's scope determination in *Final Negative Determination of Scope Inquiry on Certain Circular Welded Non–Alloy Steel Pipe and Tube From Brazil, the Republic of Korea, Mexico and Venezuela,* 61 Fed.Reg. 11,608 (Dep't Comm.1996) (final determ.), which was sustained by this Court in *Wheatland Tube Co. v. United States,* 973 F.Supp. 149 (CIT 1997). Wirth maintains that similar to the facts at issue in *Wheatland,* defendant-intervenors' sole reliance on HTSUS principles in defining the scope of covered merchandise should have resulted in Commerce's determining in its *Final Scope Ruling* "that HTS[US] classification principles can be incorporated in the written description

tion of an Order, when Petitioners adopt HTS[US] nomenclature as the basis of the Order and the [Commerce] and ITC investigations follow Petitioners' lead." (Pl.'s Br. at 27.)

As noted previously, however, the Court rejects plaintiff's contention that the petitions filed by the defendant-intervenors relied exclusively on HTSUS principles in defining the investigations' scope. Commerce's conclusion that "petitioners explicitly based the product coverage upon HTS[US] classifications and quoted directly from the applicable Customs language to further buttress their emphasis on tariff classification" in its scope determination involving Brazilian pipe and tube, 61 Fed.Reg. at 11,612 n. 7, provides a key distinction from the *Final Scope Ruling* presently before the Court. In sustaining Commerce's scope determination involving Brazilian pipe and tube, this Court specifically noted petitioners in the Brazilian pipe investigation submitted comments to Commerce which "clearly contemplate[d] the use of tariff classifications as a means of defining the scope of the investigations." *Wheatland,* 973 F.Supp. at 157. These comments submitted by the petitioner in the Brazilian pipe and tube investigation provided a significant basis for the Court's conclusion that "the exclusion of dual-certified pipe on the basis of tariff classification in the orders is not predicated upon the illustrative list of tariff classifications, but is instead 'part of the written description of the scope and is, therefore controlling.'" *Id.* (citation omitted).

■ In contrast to the facts at issue in *Wheatland,* the Court finds no indication the defendant-intervenors relied solely on HTSUS principles to define the scope of their petitions involving cut-to-length carbon steel plate from Brazil. Because plaintiff can not point to, and this Court is unable to identify, any indication that the scope in the cut-to-length carbon steel plate investigation was defined solely by reference to HTSUS principles, the Court rejects plaintiff's contention that *Wheatland* is applicable in this matter. The inclusion of various HTSUS headings in a petition ordinarily should not be interpreted to exclude merchandise determined to be within the scope of the anti-

dumping or countervailing duty orders but classified under an HTSUS heading not listed in the petition.

Finally, plaintiff discusses several cases which it contends Commerce cited improperly in its *Final Scope Ruling,* and argues those cases actually support its argument that CST's profile slab is unambiguously excluded from the scope of the plate orders. First, plaintiff cites *Royal Business Machines, Inc. v. United States,* 1 CIT 80, 507 F.Supp. 1007 (1980) for the proposition that "[Commerce] cannot ignore an unambiguous . . . record excluding from an Order's scope merchandise consistently classified in an HTS[US] Heading not subject to investigation." (Pl.'s Br. at 28.) The Court finds plaintiff's arguments concerning *Royal Business Machines* unpersuasive. First, regardless of the accuracy of plaintiff's characterization of the holding of *Royal Business Machines,* the Court, as noted above, finds the petition and other relevant documents do not exclude unambiguously CST's profile slab from the scope of the plate orders. Additionally, this Court's decision in *Royal Business Machines* clearly states that Commerce's scope determinations are independent from Customs' classification determinations. *See Royal Business Machines, Inc. v. United States,* 1 CIT 80, 87 n. 18, 507 F.Supp. 1007, 1014 n. 18 (1980) ("The determinations under the antidumping law may properly result in the creation of classes which do not correspond to classifications found in the tariff schedules or may define or modify a known classification in a manner not contemplated or desired by the Customs Service.").

Plaintiff's citation of *INA Walzlager Schaeffler KG v. United States,* 108 F.3d 301 (Fed.Cir.1997) also is without merit. Wirth's citation of *INA Walzlager* is premised on the contention that "the Petition framed the intended scope of the investigation and any resulting Order solely on HTS[US] terminology." (Pl.'s Br. at 29.) Again, regardless of the accuracy of its characterization of the case, Wirth's citation of *INA Walzlager* is premised upon its assumption that defendant-intervenors relied solely on HTSUS principles in defining the scope of their peti-

tions, an assumption this Court already has rejected.

Finally, the plaintiff's arguments concerning *Koyo Seiko Co., Ltd. v. United States,* 955 F.Supp. 1532 (CIT 1997) also are misplaced. Plaintiff endeavors to contrast *Koyo Seiko* with the instant matter, asserting "there does not exist any evidence of ambiguity in the Petition and underlying [Commerce] and ITC investigations." (Pl.'s Br. at 30.) As with its other efforts, plaintiff's arguments are vitiated by its inaccurate characterization of the record in this case. Because Wirth's reliance on case law rests on an inaccurate interpretation of record in this matter, its arguments are rejected.

■ The Court finds the record contains substantial evidence supporting Commerce's determination that the petitions and other relevant definitions of cut-to-length carbon steel plate are ambiguous as to whether CST's profile slab is included within scope of plate orders. First, as discussed above, the Court notes the petitions filed by defendant-intervenors included general dimensional measurements describing merchandise within the scope of the petitions. *See Antidumping Duty Petition, reproduced* in Pl.'s App. Tab 1, Ex. 11, at 14–15; *Countervailing Duty Petition, reproduced* in Pl.'s App. Tab 1, Ex. 12 at 11–12. The parties do not dispute CST's profile slabs fall within the dimensional measurements included in the petitions. (*See* Def.'s Br. at 20–21 (stating it is "undisputed" CST's profile slabs fall within the petitions' dimensional criteria); Pl.'s Br. at 33 (conceding CST's profile slabs fall within dimensional criteria).) Second, the Court finds the steel products specifically excluded from the scope of the petitions filed by the defendant-intervenors do not include profile slabs. *See Antidumping Duty Petition, reproduced* in Pl.'s App. Tab 1, Ex. 11 at 14–15 (excluding flat carbon steel products and universal mill plate "in coils" and plate "that is clad, or plated or coated with metal" from scope of petitions) (footnotes omitted); *Countervailing Duty Petition, reproduced in* Pl.'s App. Tab 1, Ex. 12 at 11–12 (same). Third, the Court finds defendant-intervenors did not rely exclusively on HTSUS headings to define the scope of their petitions, but rather

included HTSUS headings in their petitions to meet the requirements of 19 C.F.R. § 353.12(b)(4) (1996) and 19 C.F.R. § 355.12(b)(4) (1996). Finally, the Court notes the plate orders published by Commerce specifically note "[a]lthough the Harmonized Tariff Schedule of the United States (HTS) subheadings are provided for convenience and customs purposes, our written description of the scope of these proceedings are dispositive." 58 Fed.Reg. at 37,063; *see also* 58 Fed.Reg. at 37,224. Based on its finding that the petition, order, and other relevant documents do not specifically include or exclude profile slab from the scope of the plate orders, the Court concludes Commerce's determination that those sources were not dispositive is supported by substantial evidence on the record and otherwise in accordance with law. Accordingly, Commerce's resort to the application of the *Diversified Products* factors in determining whether CST profile slab is merchandise of the same class or kind as cut-to-length carbon steel plate is supported by substantial evidence and otherwise in accordance with law.

B. *Whether Commerce's Diversified Products Analysis is Supported by Substantial Evidence*

The applicable regulations provide that when the petition, and investigations and determinations of Commerce and the ITC do not resolve whether an item is within the scope of an antidumping or countervailing duty order, Commerce shall continue its analysis by applying the *Diversified Products* criteria, which include "(i) [t]he physical characteristics of the product; (ii)[t]he expectations of the ultimate purchasers; (iii)[t]he ultimate use of the product; and (iv)[t]he channels of trade." 19 C.F.R. § 353.29(i)(2) (1996); 19 C.F.R. § 355.29(i)(2) (1996) (same language applying to scope inquiries involving countervailing duty orders). Plaintiff's second primary challenge to the *Final Scope Ruling* asserts Commerce's *Diversified Products* analysis is not supported by substantial evidence on the record. Defendant and defendant-intervenors maintain this Court should reject plaintiff's contentions and find Commerce's conclusions based on its application of the *Diversified Products* criteria to be supported by substantial evidence on the record.

1. *Physical Characteristics*

■ The *Final Scope Ruling* discusses three factors supporting Commerce's determination that CST's profile slab has similar physical characteristics as merchandise unambiguously within the scope of the plate orders. First, the *Final Scope Ruling* notes "CST's profile slab meets the dimensional and chemical criteria of merchandise subject to the [less than fair value] investigation." *Final Scope Ruling* at 12. Second, Commerce's determination notes that although "[p]rofile slab may not always undergo testing of its mechanical properties, . . . certification of mechanical properties is not needed for all" merchandise within the scope of the plate orders. *Id.* at 12. Finally, Commerce's scope determination concludes CST's profile slab is "not 'semi-finished,' but [rather] a hot-rolled carbon steel product", and thus of the same class or kind as merchandise within the scope of the plate orders, because CST's subjecting profile slabs to hot scarfing and final rolling passes constitutes further working of the slab and because CST's profile slab undergoes no further processing before ultimate use. *Id.* at 13.

Plaintiff challenges the *Final Scope Ruling*'s conclusions, contending CST's profile slab has dimensional criteria, chemical and mechanical properties, surface characteristics and production processes which are "legally indistinguishable from the physical characteristics of [a semifinished plate product] and are distinctly different from those of plate." (Pl.'s Br. at 33.) In making this argument, plaintiff asserts CST's profile slab has physical characteristics which make it more similar to reroll slab, a semifinished plate product, rather than a product of the same class or kind as merchandise within the scope of the plate orders.

The Court rejects plaintiff's arguments and observes in arguing CST profile slab is more similar to reroll slab than plate, plaintiff essentially is inviting this Court to reweigh the record evidence before it. This

Court will not reweigh the evidence established in the record before Commerce. *See Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966) (stating judicial review of whether administrative determination is supported by substantial evidence involves "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence") (citation omitted). First, the Court notes plaintiff concedes profile slab and carbon steel plate have similar chemical criteria, (*see* Pl.'s Br. at 33), and as noted above, both products have similar dimensional measurements.

Additionally, the Court notes Commerce's *Final Scope Ruling* addresses plaintiff's claim that because CST's profile slab does not meet the mechanical specifications for carbon steel plate, it cannot be considered to be the same class or kind of merchandise. The *Final Scope Ruling* quotes the ASTM manual and concludes "plate is [not] limited to products which are certified to mechanical specifications and, although CST may not have certified the mechanical specifications itself, the evidence presented by Petitioners suggests that shipments of CST's profile slab have been found to meet them." *Final Scope Ruling* at 12. Based on these considerations, the Court finds Commerce's determination that CST profile slab and merchandise unambiguously within the scope of the plate orders share similar physical characteristics is supported by substantial evidence on the record and is otherwise in accordance with law.

### 2. Ultimate Use

■ ˙ Commerce's *Final Scope Ruling* also concludes CST's profile slab has ultimate uses similar to merchandise unambiguously within the scope of the plate orders. The *Final Scope Ruling* concluded "products within the same class or kind may be suitable for certain but not all the same end uses." *Final Scope Ruling* at 13. Additionally, Commerce observed that "while products may have a physical characteristic which distinguishes them from other ... products,

this difference does not necessarily rise to a level of a class or kind distinction." *Id.* at 13–14. Taking into consideration Wirth's concessions that "for certain end uses the subject profile slab and plate are interchangeable" and that profile slab undergoes no further processing after the cooling stage, Commerce concluded the ultimate uses of CST's profile slab are the same as those for other products clearly within the scope of the plate orders. *Id.* at 14.

Plaintiff contends "the fact that a more expensive product can be substituted for a less expensive product in short supply does not constitute substantial evidence that the two products have the same ultimate use." (Pl.'s Br. at 39.) Additionally, Wirth asserts it did not concede profile slabs and plate are interchangeable for certain end uses. The very next sentence in plaintiff's brief, however, states that Wirth "recognize[s] that for certain non critical applications, in which an end user does not need a product mill-certified to the mechanical properties found in plate, an end user, if it so desires, can use either heavy plate or profile slabs." (*Id.* at 39.)

The Court finds plaintiff's position makes a distinction without a difference. While steel plate and profile slab may not be "interchangeable" in the sense that one product is an identical replacement for the other, plaintiff concedes steel plate and profile slab can be used as substitutes for each other. This suggests to the Court that the two products have similar, although perhaps not identical, ultimate uses. Having conceded that profile slab and steel plate can be used as substitutes, the Court gives little weight to plaintiff's statement that "the fact that a more expensive product can be substituted for a less expensive product in short supply does not constitute substantial evidence that the two products have the same ultimate use." (*Id.* at 39.) The Court finds Commerce's determination that "the ultimate uses of [CST] profile slab are the same as those for other products within the scope of the [plate] orders", *Final Scope Ruling* at 14, is supported by substantial evidence on the record and is otherwise in accordance with law.

### 3. Expectations of Ultimate Purchasers

In concluding ultimate purchasers have similar expectations of CST profile slab and carbon steel plate, Commerce places weight on its determination that products within the same class or kind " 'may be suitable for certain but not all end uses.' " *Final Scope Ruling* at 15 (quoting *Notice of Final Determination of Sales at Less Than Fair Value: Carbon Cold–Rolled Carbon Steel Flat Products From Argentina*, 58 Fed.Reg. 37,062, 37,069 (Dep't Comm.1993)). While Commerce concedes "customer expectations may vary depending upon the ultimate use of the product", it concludes "nothing in the record ... suggests that the expectations of the ultimate purchaser are different for [CST's] profile slab or other types of plate when purchased for common end uses." *Id.*

Plaintiff's asserts Commerce's *Final Scope Ruling* failed to address two significant questions concerning the expectations of ultimate purchasers. First, plaintiff contends Commerce's determination should have addressed "whether an end user which requires a product with the performance characteristics of mill certified plate would purchase profile slabs in its place." (Pl.'s Br. at 40.) Second, plaintiff contends Commerce's determination is deficient for failing to address "whether a company which does not require a mill certified plate would be willing to pay a premium for mill certified plate where less expensive profile slabs are available." (*Id.*)

The Court finds plaintiff's assertions do not establish Commerce's conclusion that ultimate purchasers of CST profile slab and carbon steel plate have the same expectations is not supported by substantial evidence on the record. Plaintiff's challenge highlights the exception clearly noted by Commerce that there exist some ultimate uses for which CST's profile slab and carbon steel plate cannot be used as substitutes. The applicable regulation, however, does not provide that the products being compared must have identical uses. Rather, the Secretary is directed to evaluate the *Diversified Products* criteria and determine whether a product is sufficiently similar as merchandise unambiguously within the scope of an order as to conclude the two are merchandise of the same class or kind. In this matter, the Court finds that Commerce's determination that purchasers using CST profile slab in place of carbon steel plate have similar expectations of the product is supported by substantial evidence on the record and is otherwise in accordance with law.

### 4. Channels of Trade

Finally, in evaluating whether CST profile slab and carbon steel plate are sold in similar channels of trade, Commerce's *Final Scope Ruling* concluded "[b]ecause CST's profile slab, like plate, is sold to service centers and to end users, we conclude that while profile slab may not be a mainstream steel product, there is overlap in the channels of trade for this product and the plate subject to the AD and CVD orders against Brazil." *Final Scope Ruling* at 16. Plaintiff concedes that "the channels of trade for profile slabs and heavy plate may overlap", but argues any overlap is irrelevant because "the channels of trade for profile slabs and plate also overlap with the channels of trade for reroll slabs." (Pl.'s Br. at 41.)

The Court rejects plaintiff's argument that the overlap in the channels of trade between CST's profile slab and steel plate unambiguously subject to the plate orders is irrelevant. Plaintiff's argument simply invites this Court to reweigh the record evidence supporting Commerce's determination. The Court finds Commerce's determination that CST profile slab and merchandise within the scope of the plate orders are sold within the same channels of trade is supported by substantial evidence on the record and is otherwise in accordance with law.

### C. Application of Commerce's Final Scope Ruling to November 1994 Entry

The third primary argument raised by plaintiff contends Commerce may not apply its *Final Scope Ruling* to assess antidumping[6] or countervailing duties against

---

6. The Court notes the parties contest only the assessment of countervailing duties on the November 1994 entry. Plaintiff asserts application of Commerce's *Final Scope Ruling* as to the

the November 1994 entry of CST profile slab. Plaintiff, while acknowledging recent decisions issued by this Court support Commerce's decision to apply its scope determination to the November 1994 entry, asserts this Court should reach a different result. Plaintiff contends the domestic producers' failure to identify CST's profile slab explicitly in its petitions makes Commerce's application of its scope determination to the November 1994 entry grossly unfair as a matter of policy. Additionally, Wirth argues Commerce's decision to apply its scope determination to the November 1994 entry is inappropriate as a matter of law due to changes in Commerce's regulations subsequent to the liquidation of the November 1994 entry.

As plaintiff acknowledges, two of this Court's recent decisions support Commerce's determination to apply its *Final Scope Ruling* to the November 1994 entry. *See Timken Co. v. United States*, 972 F.Supp. 702 (CIT 1997); *FAG Kugelfischer Georg Schafer KGaA v. United States*, 932 F.Supp. 315 (CIT 1996). These cases reflect the Court's determination that Commerce may "apply [a scope ruling] beginning with the entire period of investigation during which entries of the scope merchandise were first suspended." *Timken Co.*, 972 F.Supp. at 703; *see also FAG Kugelfischer*, 932 F.Supp. at 318–20 (upholding Commerce's determination to apply an affirmative scope ruling to the entire period of review during which entries of scope merchandise were first suspended). Therefore, the issue before the Court is whether the November 1994 entry was suspended from liquidation at the time Commerce's scope inquiry was initiated.

Initially, the Court notes Customs officials at the Port of Detroit reclassified Wirth's November 1994 entry of CST profile slab under heading 7208, HTSUS, on May 18, 1995. Because liquidation of merchandise classified under heading 7208, HTSUS, was suspended by Commerce's issuance of the plate orders, the November 1994 entry was suspended from liquidation as of May 18, 1995, due to Customs' reclassification of the

merchandise under a heading within the scope of the plate orders.

On January 16, 1996, Wirth requested Commerce conduct a scope inquiry to evaluate whether CST profile slab is of the same class or kind as merchandise covered by the plate orders. Commerce's regulations provide that merchandise suspended from liquidation at the time a scope inquiry is initiated is to remain suspended pending final decision. *See* 19 C.F.R. § 355.29(j)(1) (1996) ("When the Secretary initiates a scope inquiry pursuant to paragraph (c) of this section, and the subject product is already subject to suspension of liquidation, that suspension of liquidation will be continued pending a preliminary or a final scope ruling.").

Because the relevant regulations establish that the November 1994 entry, which was suspended as of January 16, 1996 when Wirth requested a scope inquiry, remained suspended until Commerce's issuance of its *Final Scope Ruling*, the Court rejects plaintiff's contention that the suspension of liquidation of the November 1994 entry was lifted by Customs' letter of August 27, 1996, stating CST profile slab was classified properly under heading 7207, HTSUS. Based on its determination that Wirth's November 1994 entry was suspended from liquidation until Commerce issued its *Final Scope Ruling*, the Court finds Commerce's determination to apply the results of its *Final Scope Ruling* to Wirth's November 1994 entry is supported by substantial evidence on the record and is otherwise in accordance with law.

### D. *Customs' Authority to Assess Interest on Wirth's November 1994 Entry*

 The final issue before the Court is plaintiff's contention that Customs may not assess interest on Wirth's November 1994 entry of CST profile slab. As plaintiff notes, Customs did not require it to deposit estimated antidumping or countervailing duties because the profile slab was entered under heading 7207, HTSUS, which was not subject to the orders on cut-to-length carbon steel plate. Plaintiff also argues this Court's decision in *New Zealand Lamb Co., Inc. v. Unit-*

---

assessment of antidumping duties is "moot" because Commerce found a zero rate in its admin-

istrative review covering the November 1994 entry.

*ed States,* Slip Op. 97–50, 1997 WL 209165 (CIT Apr. 22, 1997), supports its position that interest cannot be assessed against underpayments of duties from the November 1994 entry of CST profile slab.

Defendant asserts the Court may not consider plaintiff's interest claim because plaintiff failed to exhaust its administrative remedies by not raising the claim before Commerce. In the alternative, defendant asserts that even if this Court does address plaintiff's interest claim, a recent decision by the United States Court of Appeals for the Federal Circuit provides support for Commerce's collection of interest on underpayments of countervailing duties on the November 1994 entry. *See Sharp Electronics Corp. v. United States,* 124 F.3d 1447, 1449 (Fed.Cir.1997) (holding the statutory interest provision codified in 19 U.S.C. § 1677g "applies whenever such amounts are statutorily owed, whether or not actually deposited, because any other result would be absurd").

Plaintiff concedes the interest issue was not raised before Commerce, but requests this Court apply a limited exception to the exhaustion requirement recognized in *Budd Co., Wheel & Brake Div. v. United States,* 773 F.Supp. 1549 (CIT 1991). In *Budd Co.,* this Court noted it may exercise discretion to review claims which strict enforcement of the exhaustion requirement would otherwise preclude where "[p]laintiff raise[s] a new argument that [is] purely legal and require[s] no further agency involvement." *Budd Co.,* 773 F.Supp. at 1555 n. 2 (citing *Seattle Marine Fishing Supply Co. v. United States,* 12 CIT 60, 74, 679 F.Supp. 1119, 1130 (1988); *Hercules, Inc. v. United States,* 11 CIT 710, 735, 673 F.Supp. 454, 476 (1987); *Rhone Poulenc, S.A. v. United States,* 7 CIT 133, 136, 583 F.Supp. 607, 611 (1984)).

 The Court notes plaintiff's concession it failed to raise the interest issue before the agency, and observes plaintiff's failure to raise the interest issue deprived Commerce of the opportunity to consider and state its views on this issue on the record. As a general rule, there is a strong interest in ensuring the agency, which is expert in these matters, has an opportunity to provide on the record a full explication of all issues raised by the parties. The agency has a proper function as does the Court in performing its judicial function. The Court should not endeavor to perform the function of the agency by addressing issues on which the agency has not had an opportunity to express its views. The Court notes the facts in this matter are so convoluted that additional fact finding would probably be required. These matters could have been raised at the administrative level. It hardly serves the purposes of judicial economy for the Court to visit these issues anew when they might well have been resolved at the administrative level. While the Court acknowledges the legal precedent cited by plaintiff, it declines to exercise its discretion to address plaintiff's contentions concerning the assessment of interest on the November 1994 entry of CST profile slab.

CONCLUSION

For the reasons stated above, the Court finds Commerce's *Final Scope Ruling* is supported by substantial evidence on the record and is otherwise in accordance with law. Additionally, the Court finds Commerce's determination to apply the results of its *Final Scope Ruling* to Wirth's November 1994 entry of CST profile slab is supported by substantial evidence and otherwise in accordance with law. Finally, the Court declines to address plaintiff's argument concerning the assessment of interest on the November 1994 entry, finding plaintiff failed to exhaust its administrative remedies on this issue before the agency. Accordingly, plaintiff's Motion for Judgment Upon the Agency Record is denied and this action is dismissed. Additionally, because the Court finds oral argument unnecessary to dispose of this matter, defendant-intervenors' consent motion for oral argument is denied.

JUDGMENT ORDER

This matter having been duly submitted for decision and this Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision it is hereby

**ORDERED** that plaintiff's Motion for Judgment Upon the Agency Record is denied; and it is further

**ORDERED** that defendant-intervenors' consent motion for oral argument in this matter is denied; and it is further

**ORDERED** that this matter is dismissed.