**Slip Op. 99-99**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

<table>
<tr><td>

Eckstrom Industries, Inc.,

         Plaintiff,

      v.

The United States,

         Defendant.

</td><td>

BEFORE: Pogue, Judge

Court No. 97-10-01913

**Public Version**

</td></tr>
</table>

[Commerce's remand determination is sustained.]

Decided: September 20, 1999

Powell, Goldstein, Frazer & Murphy LLP, (N. David Palmeter, Susan M. Mathews, and Ronald E. Minsk) for Plaintiff.

David W. Ogden, Acting Assistant Attorney General, Civil Division, U.S. Department of Justice; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, (Lucius B. Lau); Linda A. Andros, Attorney-Advisor, Office of the Chief Counsel for Import Administration, Department of Commerce, of counsel, for Defendant.

**OPINION**

**Pogue, Judge**: On October 28, 1998, in Eckstrom Industries, Inc. v. United States, 22 CIT ____, 27 F. Supp.2d 217 (1998) (Eckstrom I),[1] this Court remanded certain aspects of the

---

[1]Familiarity with the Court's earlier decision in this case is presumed.

Department of Commerce's ("Commerce" or "the Department") scope determination issued pursuant to 19 C.F.R. § 351.225(k)(1)(1998).[2]

The remand order directed Commerce to reconsider its determination and, if necessary, to conduct a formal scope inquiry pursuant to 19 C.F.R. § 351.225(k)(2)(1998).[3] After conducting the § 351.225(k)(2) inquiry, Commerce affirmed its determination that Eckstrom Industries, Inc.'s ("Eckstrom") cast stainless steel butt-weld pipe fittings are within the scope of the antidumping duty order on stainless steel butt-weld pipe fittings from Taiwan.[4] See

_____

[2]Section 351.225(k)(1) provides,

> [I]n considering whether a particular product
> is included within the scope of an order
>  . . . , [Commerce] will take into account
> the following: (1) the descriptions of the
> merchandise contained in the petition, the
> initial investigation, and the determinations
> of [Commerce] (including prior scope
> determinations) and the Commission.

[3]Section 351.225(k)(2) provides,

> When the above [(k)(1)] criteria are not
> dispositive, the Secretary will further consider:
> (i) The physical characteristics of the product;
> (ii) The expectations of the ultimate purchasers;
> (iii) The ultimate use of the product; (iv) The
> channels of trade in which the product is sold;
> and (v) The manner in which the product is
> advertised and displayed.

[4]The original antidumping duty order states,

> The products subject to this investigation
> are certain stainless steel butt-weld pipe
> fittings, whether finished or unfinished,
> under 14 inches inside diameter.
>
> Certain welded stainless steel butt-weld
> pipe fittings (pipe fittings) are used to
> connect pipe sections in piping systems

Final Results of Redetermination Pursuant to Court Remand ("Remand

Determination") at 1-2.  Plaintiff Eckstrom objects to Commerce's

remand determination, arguing that the Order applies only to welded

pipe fittings, not cast.  For the reasons set forth below,

Commerce's remand determination is sustained.


**BACKGROUND**

In Eckstrom I, this Court held that the description of the

---

where conditions require welded connections.
The subject merchandise is used where one or
more of the following conditions is a factor
in designing the piping system: (1) Corrosion
of the piping system will occur if material
other than stainless steel is used;
(2) contamination of the material in the
system by the system itself must be prevented;
(3) high temperatures are present; (4) extreme
low temperatures are present; (5) high
pressures are contained within the system.

Pipe fittings come in a variety of shapes,
with the following five shapes the most
basic: 'elbows', 'tees', 'reducers', 'stub
ends', and 'caps'.  The edges of finished
pipe fittings are beveled.  Threaded,
grooved, and bolted fittings are excluded
from these investigations.  The pipe fittings
subject to these investigations are
classifiable under subheading 7307.23.00 of
the Harmonized Tariff Schedule of the United
States (HTSUS).

Although the HTSUS subheading is provided for
convenience and customs purposes, our written
description of the scope of these
investigations is dispositive.

Amended Final Determination and Antidumping Duty Order:
Certain Welded Stainless Steel Butt-Weld Pipe Fittings From
Taiwan, 58 Fed. Reg. 33,250 (Dep't Commerce, June 16, 1993)
("Order").

subject merchandise contained in the petition, the initial investigation, and the final determination do not unambiguously include cast pipe fittings within the scope of the Order. See Eckstrom I, 22 CIT at ____, 27 F. Supp.2d at 228. Similarly, however, the Court held that the Plaintiff had not adequately demonstrated that the § 351.225(k)(1) criteria are dispositive in excluding cast pipe fittings from the scope of the Order. See id. Accordingly, this Court concluded that Commerce's determination that the § 351.225(k)(1) criteria are dispositive was not supported by substantial evidence. Upon remand, Commerce exercised its discretion to initiate a formal scope inquiry pursuant to § 351.225(k)(2). See Remand Determination at 1.

In its § 351.225(k)(2) inquiry, Commerce preliminarily determined that Eckstrom's cast stainless steel butt-weld pipe fittings are within the scope of the antidumping duty order on stainless steel butt-weld pipe fittings from Taiwan. See Remand Determination at 1. Commerce then gave interested parties an opportunity to comment and to address the § 351.225(k)(2) criteria. See id. After reviewing the parties' comments and the record, Commerce once again determined that Eckstrom's cast stainless steel butt-weld pipe fittings are within the scope of the antidumping duty order on stainless steel butt-weld pipe fittings from Taiwan. See id. at 1-2.

## STANDARD OF REVIEW

The Court reviews Commerce's scope determination to decide

whether it is in accordance with law and supported by substantial evidence.  See 19 U.S.C. § 1516a(b)(1)(B)(i) (1994).


## DISCUSSION

In determining whether Eckstrom's cast pipe fittings are subject to the Order, Commerce considered the five factors provided for in § 351.225(k)(2).  In evaluating the criteria, Commerce is directed to "determine whether [the contested] product is sufficiently similar [to] merchandise unambiguously within the scope of [the] order as to conclude the two are merchandise of the same class or kind."  Wirth Limited v. United States, 22 CIT ___, ___, 5 F. Supp.2d 968, 981 (1998), aff'd, No. 98-1391 (Fed. Cir. Feb. 2, 1999). The Court here addresses Eckstrom's challenges to the § 351.225(k)(2) criteria as considered by Commerce in making its determination.

### 1. Physical Characteristics

Commerce concluded that Eckstrom's cast pipe fittings are covered under the Order because they are made of stainless steel, under fourteen inches in inside diameter and connected by means of a butt-weld.  See Remand Determination at 6-8.  In addition, Commerce determined that Eckstrom's cast pipe fittings are made from T316L stainless steel, "one of the two grades of stainless steel that the ITC stated are usually used for subject fittings." Remand Determination at 6-7.  The evidence in the record clearly supports this determination.

Nevertheless, Eckstrom challenges Commerce's determination,

arguing that the evidence clearly establishes that the physical characteristics of cast pipe fittings are different from wrought[5] (or welded) pipe fittings, which are clearly within the Order's scope. Eckstrom contends that welded pipe fittings are much stronger than cast pipe fittings, and that "[i]t is this difference in strength that makes cast fittings unsuitable for high-pressure, high-temperature, extremely low-temperature, or contamination-risk applications." Pl.'s Comments on Remand Scope Det. ("Pl.'s Comments") at 5. Second, Eckstrom points out that cast pipe fittings are made to different dimensions than wrought fittings. See id. at 6. "In other words, the two products are different sizes and can not [sic] be substituted for one another in the same piping system." Id. Moreover, cast pipe fittings are made from a different raw material because the welding and casting manufacturing processes give the same grade of steel, here T316L, different physical properties. See id. at n.6. "Thus, [according to Eckstrom,] there is no respect in which the physical characteristics of the two products are the same." Id.

Commerce replies that the scope of the Order refers to pipe fittings that are used where "corrosion of the piping system will occur if material other than stainless steel is used," thereby suggesting that the strength of the pipe fittings is irrelevant. See Def.'s Resp. at 11. With respect to the dimensions of the

---

[5]"The term 'wrought' distinguishes forged iron or steel pipe from cast-iron pipe." THE MAKING, SHAPING AND TREATING OF STEEL 1019 (William T. Lankford, Jr., et al. eds., 10th ed. 1985). Welded pipe fittings are wrought.

fittings, Commerce notes that the only dimensional requirements necessary are that the pipe fitting be less than fourteen inches in inside diameter.  See id.[6]

The Court declines to re-weigh the evidence here.  See Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966) (noting that the substantial evidence standard "frees the reviewing courts of the time-consuming and difficult task of weighing the evidence, it gives proper respect to the expertise of the administrative tribunal and it helps promote the uniform application of the statute.").  Essentially, Plaintiff highlights the differences between its cast fittings and the fittings unambiguously covered by the Order and urges the Court to reinterpret the record from this standpoint.  It is well-established, however, that Commerce has discretion in balancing the § 351.225(k)(2) criteria.  See e.g., Smith Corona Corp. v. United States, 12 CIT 854, 869, 698 F. Supp. 240, 253 (1988).[7]  Moreover, under the § 351.225(k)(2) criteria,

_____

[6]Commerce also argues that "Eckstrom's explanation of the manufacturing process of cast and wrought fittings [is] not illuminating as to the proper interpretation of the scope of the Order, as the scope language does not discuss manufacturing process as a parameter for including or excluding any type of fittings."  Remand Determination at 7.  Because the Court's affirmation does not rely on this argument, however, the Court declines to address it further.

[7]In Smith Corona, the court applied what were known as the Diversified Products criteria from Diversified Products Corp. v. United States, 6 CIT 155, 162, 572 F. Supp. 883, 889 (1983).  The Diversified criteria were subsequently codified in the federal regulations and are currently found at 19 C.F.R. § 351.225(k)(2).  Although the § 351.225(k)(2) and Diversified Products criteria do not conform exactly, they are substantially similar such that the reasoning in Smith Corona still applies.  Cf. Wirth, 22 CIT at ___, 5 F. Supp.2d at 973 n.4.

Commerce need only demonstrate that the general physical characteristics of the products under consideration are "sufficiently similar" in order to conclude that the two are of the same class or kind. Wirth, 22 CIT at ___, 5 F. Supp. 2d at 981; Smith Corona, 12 CIT at 860-61, 698 F. Supp. at 245-46 (finding that different components constitute physical differences but do not necessarily add up to a different class or kind).

Here, Commerce's focus on size, grade, and the corrosion resistance of stainless steel is sufficient to support its conclusion. Accordingly, the Court finds Commerce's determination with respect to physical characteristics to be supported by substantial evidence.

### 2. Expectations of the Ultimate Purchaser

Commerce found that pulp and paper companies are the primary customers of cast pipe fittings and that they use these fittings to build process piping systems. See Remand Determination at 9. Commerce also determined that "as the subject merchandise is used in a variety of applications, expectations of end-users will not be identical, i.e., expectations will necessarily differ depending upon the use of the product. However, when used in similar applications, e.g., corrosion resistance, the expectations are similar." Id. Commerce noted that Eckstrom admits that its cast pipe fittings are used where corrosion of the piping system is a concern, which is one of the factors expressed in the scope of the Order. See id. Based on this finding, Commerce concluded that "there is similarity in the expectations of the end[-]users of

Eckstrom's cast pipe fittings and fittings subject to the [O]rder."
Id.

Eckstrom disagrees, arguing that end-users have very different
expectations for cast and welded pipe fittings. See Pl.'s Comments
at 7. The ultimate purchasers of Eckstrom's cast pipe fittings are
generally pulp and paper companies; the ultimate purchasers of its
welded pipe fittings are semiconductor manufacturers. See id. at
6. "Welded pipe fittings are stronger and suitable where there are
additional concerns about contamination, extreme-temperature, and
extreme-pressure in the piping system. . . . Cast fittings are
weaker, less reliable and less expensive." Id. at 7. In essence,
Eckstrom contends that Commerce simply identifies a generality--
that both fittings are used in piping systems where corrosion is a
concern--and then asserts that this generality encompasses the
expectations of end-users for both products. Id. at 8.

In response, Commerce reiterates the position taken in its
Remand Determination. There, Commerce concluded that the
expectations of the end-users do not have to be identical for the
cast pipe fittings to be covered by the scope of the Order. See
Remand Determination at 9. Commerce maintains that even if the
expectations vary, there is still a general application that
encompasses similar expectations, i.e., piping systems where
corrosion resistance is desired. See id.

To properly examine § 351.225(k)(2)(ii), it is necessary to
look at both what the expectations are and who the ultimate
purchasers are. Cf. Diversified Products, 6 CIT at 162, 572 F.

Supp. at 889.  With respect to the latter, Eckstrom acknowledges that its cast pipe fittings are sold to pulp and paper companies. See Pl.'s Comments at 6.  Similarly, Commerce notes that the ITC determination in this case referred to pulp and paper companies as one of the end-users of the subject merchandise under consideration.  See Remand Determination at 8-9.  Meanwhile, Eckstrom points out that it sells its welded pipe fittings to high-tech semiconductor manufacturers.  See Pl.'s Comments at 6. Nonetheless, record evidence also indicates that some of Eckstrom's customers have purchased both cast and welded pipe fittings.  See Pl.'s Dec. 16, 1998, Questionnaire Resp. at 17.  Based on the record evidence as a whole, this Court finds that Commerce's determination that cast and welded pipe fittings share similar ultimate purchasers is supported by substantial evidence.

With regard to expectations, Commerce concludes that purchasers of cast and welded pipe fittings have similar expectations because both are expected to prevent corrosion of piping systems.  See Remand Determination at 9.  Eckstrom argues that the two products would never be substitutes for each other in the same piping system and thus the purchasers of each have completely different expectations.[8]  See Pl.'s Comments at 6-8.

The Court does not find that Plaintiff's arguments establish that Commerce's conclusion that cast and welded pipe fitting

---

[8]Eckstrom states that "[w]elded pipe fittings are stronger and suitable where there are additional concerns about contamination, extreme-temperature, and extreme-pressure in the piping system," while "[c]ast fittings are weaker, less reliable, and less expensive."  Pl.'s Comments at 7.

purchasers have similar expectations is not supported by substantial evidence. In <u>Wirth</u>, the court upheld Commerce's determination that purchasers of CST profile slabs and carbon steel plate had similar expectations, even though there were uses for which the products were not substitutes. <u>See</u> <u>Wirth</u>, 22 CIT at _ , 5 F. Supp. 2d at 981. Furthermore, in <u>Smith Corona</u>, 12 CIT at 866, 698 F. Supp. at 250, the court looked at the motivations of the ultimate purchasers to conclude that consumers who purchase typewriters with text memory are in essence purchasing typewriters with an added feature, not a different product altogether.

Here, welded pipe fittings, unlike cast pipe fittings, have characteristics that enable them to be used under high pressure, high temperature, or contamination sensitive conditions. Nevertheless, they also share similar characteristics with cast pipe fittings in that they have similar dimensions, are made of the same material, connect by means of a butt-weld, and are expected to prevent corrosion of piping systems.

It is not the task of this Court to review the record evidence to determine whether a different conclusion could be reached, but to determine whether Commerce's conclusion is supported by substantial evidence. <u>See</u> <u>Timken Co. v. United States</u>, 12 CIT 955, 962, 699 F. Supp. 300, 306 (1988). Commerce's determination that purchasers of cast and welded pipe fittings have similar expectations because both are expected to prevent corrosion of piping systems is substantially supported by the record.

**3. Ultimate Use of the Product**

Commerce determined that "the ultimate uses of Eckstrom's cast pipe fittings are the same as those of fittings which the [O]rder is intended to cover." Remand Determination at 10. Commerce's position relies on the Order's requirement that pipe fittings subject to the Order be "used where one or more of the following conditions is a factor: (1) [c]orrosion of the piping system will occur if material other than stainless steel is used . . . ."[9] Id. Commerce construes the language "one or more" to mean at least one. See id. Eckstrom's cast pipe fittings may be used where corrosion of the piping system will occur if material other than stainless steel is used. See Pl.'s Dec. 16, 1998, Questionnaire Response at 12. Thus, Commerce contends, Eckstrom's cast pipe fittings and welded pipe fittings share similar end uses. See id.

According to Eckstrom, however, Commerce's analysis is "nonsensical" because it does not address the differences in the specific end uses of cast pipe fittings and welded pipe fittings. See Pl.'s Comments at 8-10. Eckstrom argues,

> An almost infinite number of products are suitable for use under any single listed condition, but only wrought pipe fittings are suitable for use under any combination ("one or more") of the requisite conditions . . . Because cast fittings are not suitable for use under any

_____

[9]The scope description states that subject merchandise is used where one or more of the following conditions is a factor in designing the piping system: 1) corrosion of the piping system will occur if material other than stainless steel is used; 2) contamination of the material in the system by the system itself must be prevented; 3) high temperatures are present; 4) extreme low temperatures are present; and 5) high pressures are contained within the system. See Remand Determination at 7.

combination of the listed conditions, cast fittings cannot be within the scope of the [O]rder.

Id. at 9.  Eckstrom further contends that Commerce has not indicated that welded pipe fittings are actually used in the same applications as cast pipe fittings.  See id.  In addition, Eckstrom argues that the petitioner's absence from commenting in this scope inquiry indicates that it considers cast fittings to be outside the scope of the Order.  See id. at 10.

In response, Commerce reiterates its Remand Determination position and counters that there could be many reasons for petitioner's non-participation in the remand proceeding.  See Def.'s Resp. at 15-16.

Commerce's reliance on one of the five listed uses of the product is reasonable.  The Order states that the pipe fittings subject to the Order are "used where one or more of the following conditions is a factor".  Order at 33,250 (emphasis added).  The use of the term "or" clearly indicates that the five conditions were listed in the alternative.  This Court finds unconvincing Eckstrom's argument that a combination of conditions must be shown for the cast pipe fittings to be covered by the scope.  Nothing in the Order requires Commerce to demonstrate that cast pipe fittings are used for more than one of the stated purposes.  That Plaintiff "can point to evidence . . . which detracts from . . . [Commerce's] decision and can hypothesize a . . . basis for a contrary determination is neither surprising nor persuasive."  Matsushita Elec. Indus. Co. v. United States, 3 Fed. Cir. (T) 44, 54, 750 F.2d 927, 936 (1984).  In addition, Eckstrom's contention that

petitioner's non-participation is indicative of one or the other position is unpersuasive. As Commerce has stated, "there may be many different reasons why the petitioner has not filed comments." Id. at 16. Accordingly, this Court holds that Commerce's determination regarding the ultimate use of the product criterion of § 351.225(k)(2) is supported by substantial evidence on the record and otherwise in accordance with law.

**4. Channels of Trade**

Commerce determined that there is some overlap between Eckstrom's channels of distribution for its cast pipe fittings and welded pipe fittings because Eckstrom sells both products to contractors and to industrial distributors. See Remand Determination at 11. Also, Eckstrom sometimes sells both products out of inventory and maintains one sales office for both types of fittings. See id. Commerce contends that half of Eckstrom's customers purchase both products, contradicting Eckstrom's claims that there are different markets for each. See id. Commerce cites the ITC's determination that, in general, a vast majority of pipe fittings are distributed through distributors, a sales practice similar to Eckstrom's. See id. In addition, Eckstrom admits to targeting pulp and paper companies for sales of cast pipe fittings, industries identified by the ITC as primary customers of the stainless steel butt-weld pipe fittings subject to its investigation. See id. at 12. Commerce, therefore, concludes that Eckstrom's primary market for sales of cast pipe fittings is similar to the markets for stainless steel butt-weld pipe fittings

subject to the Order.  On this basis, Commerce determined that both cast and welded pipe fittings have similar channels of trade, and therefore, the cast pipe fittings are covered by the Order.  See id.

Eckstrom argues that its channels of trade for cast and welded pipe fittings are distinct.  See Pl.'s Comments at 10.  Eckstrom contends it has demonstrated that the two products are sold differently; have different uses; are supplied from different sources; and have different pricing structures.  See id.  According to Eckstrom, just because both products are sold to contractors and industrial distributors does not support the conclusion that they are the same product that is described in an antidumping order. See id. at 11.  In essence, Eckstrom argues that the channels of trade Commerce looks to here are too broad and that Commerce must be more specific in considering the channels of trade.

Commerce responds that, "[w]hile it is true that similarities in channels of trade would not require a conclusion that the two products are within the scope of an antidumping duty order, such similarities are certainly relevant to Commerce's inquiry." Def.'s Resp. at 17.  Commerce maintains, "[T]hat Eckstrom draws its own conclusions from the evidence does not mean that Commerce's determination is unsupported by substantial evidence." Id. at 18.

The regulation does not direct Commerce to be broad or specific in looking at channels of trade, but simply requires Commerce to consider the two products' channels of trade.  When a statute is silent or ambiguous, the Court must defer to Commerce's

reasonable interpretation.   See Koyo Seiko v. United States, 36 F.3d 1565, 1573 (Fed. Cir. 1994).   Therefore, Commerce has discretion in determining the appropriate channel of trade to be reviewed under the regulation.

Moreover, this court has upheld Commerce's use of a broad channel of trade.  For example, in Diversified Products, the court sustained Commerce's finding that two products "sold by wholesale distributors in kit form to original equipment manufacturers" had similar channels of trade.  6 CIT at 162, 572 F. Supp. at 889. Although Eckstrom disagrees with Commerce's determination that there is an overlap between the channels of distribution for cast and weld pipe fittings, this does not mean that Commerce's determination was not supported by substantial evidence.  See Consolo, 383 U.S. at 620 ("the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence").  Once again, Plaintiff's argument simply invites this Court to re-weigh the record evidence supporting Commerce's determination, which the Court will not do.  Thus, this Court finds that Commerce's determination that cast pipe fittings and welded pipe fittings are sold within the same channels of trade is supported by substantial evidence on the record and otherwise in accordance with law.

**5. Manner of Advertising or Display**

Commerce concludes that Eckstrom treats both its cast and welded pipe fittings similarly in terms of advertising and display

because neither are advertised or displayed. <u>See</u> Remand Determination at 12. Eckstrom counters that it sells its cast and welded pipe fittings differently. <u>See</u> Pl.'s Comments at 11. Eckstrom maintains that it stores cast pipe fittings in inventory while it purchases and sells welded pipe fittings on an as-needed basis only. <u>See</u> <u>id.</u> Furthermore, Eckstrom provides inspection and quality control for its cast pipe fittings, but not for its welded pipe fittings. <u>See</u> <u>id.</u> at 11-12. Moreover, cast pipe fittings are sold to paper and pulp industries; welded pipe fittings are sold to the semiconductor industry. <u>See</u> <u>id.</u> at 12. Eckstrom also argues that the absence of advertising or display practices for both products does not mean that the products are similar. Rather, Eckstrom contends that at most this means that advertising and display practices are irrelevant to the determination of whether the products are similar. <u>See</u> <u>id.</u>

With respect to selling practices, Commerce responds that the manner in which the products are sold is irrelevant to the fifth § 351.225(k)(2) criterion because it is not contemplated by the regulation. <u>See</u> Def.'s Resp. at 20. The regulation "makes no reference to the manner in which the merchandise is sold; rather, the regulation directs Commerce to consider the 'manner in which the product is advertised and displayed.'" <u>Id.</u> (citing 19 C.F.R. § 351.225(k)(2)(v)). The Court agrees. Criterion 351.225(k)(2)(iv) requires some examination of selling practices; criterion 351.225(k)(2)(v) does not.

Moreover, with respect to advertising and display, this Court

finds Eckstrom's argument unpersuasive.  Although one may conclude, as Eckstrom does, that the absence of advertising or display practices for two products does not indicate that the two products are advertised and displayed similarly, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."  Consolo, 383 U.S. at 620.  Commerce has discretion to evaluate the significance of the evidence indicating the absence of advertising or display practices for the two products.  The absence of advertising or display practices for Eckstrom's cast and welded pipe fittings reasonably leads to the conclusion that Eckstrom treats both products similarly in terms of advertising and display. Therefore, Commerce's determination that cast and welded pipe fittings are advertised and displayed similarly is supported by substantial evidence.

**CONCLUSION**

In sum, the Court finds that Commerce's determination with respect to the § 351.225(k)(2) criteria is supported by substantial evidence and otherwise in accordance with law.  Therefore, the Court upholds Commerce's conclusion that cast stainless steel butt-weld pipe fittings are of the same class or kind as welded stainless steel butt-weld pipe fittings subject to the Order. Accordingly, this Court sustains Commerce's determination that cast stainless steel butt-weld pipe fittings are subject to the Order.

Donald C. Pogue
Judge

Dated:     September 20, 1999
           New York, New York