**Slip Op. 08-48**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

EAST JORDAN IRON WORKS, INC.,
LEBARON FOUNDRY INC.,
MUNICIPAL CASTINGS, INC.,
NEENAH FOUNDRY CO., TYLER PIPE
COMPANY, U.S. FOUNDRY &
MANUFACTURING CO., BINGHAM &
TAYLOR, and MUNICIPAL CASTINGS
FAIR TRADE COUNCIL,

> Plaintiffs,

> v.

UNITED STATES,

> Defendant,

> and

A.Y. MCDONALD MFG. CO.,

> Defendant-
> Intervenor.

Before:  Richard W. Goldberg,
          Senior Judge

Court No. 07-00082

**OPINION**

[Commerce's determination is sustained].

Date:  May 1, 2008

Kelley Drye Collier Shannon (Robin H. Gilbert) for Plaintiffs
East Jordan Iron Works, Inc., LeBaron Foundry Inc., Municipal
Castings, Inc., Neenah Foundry Co., Tyler Pipe Company, U.S.
Foundry & Manufacturing Co., Bingham & Taylor, and Municipal
Castings Fair Trade Council.

Jeffrey S. Bucholtz, Acting Assistant Attorney General; Patricia
M. McCarthy, Assistant Director, Commercial Litigation Branch,
Civil Division, United States Department of Justice (Michael J.
Dierberg); Office of the Chief Counsel, U.S. Department of

Commerce (Sapna Sharma), Of Counsel, for Defendant United States.

Katten Muchin Rosenman, LLP (Mark S. Zolno, Eric R. Rock, and Kazumune V. Kano) for Defendant-Intervenor A.Y. McDonald Mfg. Co.

**GOLDBERG, Senior Judge**:  East Jordan Iron Works, Inc., LeBaron Foundry Inc., Municipal Castings, Inc., Neenah Foundry Co., Tyler Pipe Company, U.S. Foundry & Manufacturing Co., Bingham & Taylor, and Municipal Castings Fair Trade Council (collectively "East Jordan") challenge the U.S. Department of Commerce's ("Commerce") determination that A.Y. McDonald Manufacturing Company's ("AYM") imports are not within the scope of the antidumping duty order in place against certain iron products. For the reasons that follow, Commerce's final scope ruling is sustained.

## I.    BACKGROUND

In 1986, Commerce published an antidumping duty order on certain iron products manufactured in China.  See Iron Construction Castings from the People's Republic of China, 51 Fed. Reg. 17,222 (Dep't Commerce May 9, 1986) (notice of antidumping duty order).  This antidumping duty order covered meter, service, and valve boxes.  In July 2006, AYM asked Commerce to determine whether its imports of meter box bases and upper bodies from China were within the scope of the antidumping duty order.  Upon investigation, Commerce found that "cast iron

bases and cast iron upper bodies, when imported independently, do not fall within the scope of the order because the order does not contain language to include parts or components of meter boxes." Scope Ruling on the Antidumping Duty Order on Iron Construction Castings from the People's Republic of China: Request by A.Y. McDonald Mfg. Co. (Jan. 18, 2007) ("AYM Scope Ruling"). East Jordan challenges this determination arguing that: (1) Commerce's scope ruling lacks substantial evidence; and (2) Commerce acted contrary to law by abdicating its responsibility for administering the antidumping duty order.[1]

## II. JURISDICTION & STANDARD OF REVIEW

The Court has jurisdiction pursuant to 28 U.S.C. § 1581(c). In reviewing a scope ruling, the Court must sustain a determination "unless it is unsupported by substantial evidence or is otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i) (2000). Substantial evidence "is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). It "requires more than a mere scintilla,

---

[1] East Jordan also argues that Commerce erred in not considering the evidence it submitted related to potential circumvention of the antidumping duty order. However, this type of evidence is not a part of Commerce's regulatory interpretive process. See 19 C.F.R. § 351.225 (2007).

but is satisfied by something less than the weight of the evidence." Altx, Inc. v. United States, 370 F.3d 1108, 1116 (Fed. Cir. 2004).

### III. DISCUSSION

**A.    Commerce's Scope Ruling is Supported by Substantial Evidence**

For Commerce's final scope ruling to be supported by substantial evidence, the agency must have properly followed its regulatory interpretive process.  This interpretive process consists of two steps.[2]  See 19 C.F.R. § 351.225(d) (2007). First, Commerce considers "the descriptions of the merchandise contained in the petition, the initial investigation, and the

---

[2] A necessary precondition to Commerce's regulatory interpretive process is language in the antidumping duty order that is subject to interpretation.  See Duferco Steel, Inc. v. United States, 296 F.3d 1087, 1096–97 (Fed. Cir. 2002).  In this case, Commerce applied its regulatory interpretive process without finding the language of the scope ambiguous as to whether parts or components were within the order's scope.  See Scope Ruling on the Antidumping Duty Order on Iron Construction Castings from the People's Republic of China: Request by A.Y. McDonald Mfg. Co. (Jan. 18, 2007), at 9.  The Court finds no error in this analysis.  Duferco does not require Commerce to halt its analysis after finding that the scope language is not subject to a proposed interpretation, or to resolve this question at all. Rather, Duferco seeks to emphasize the fact that Commerce cannot use this interpretive process to override the express language of the antidumping duty order.  Id.  "[R]eview of the petition and investigation may provide valuable guidance as to the interpretation of the order. But they cannot substitute for language in the order itself."  Id. at 1097.  Here, Commerce's application of its regulatory interpretative process is consistent with the language of the antidumping duty order.  As such, its analysis is not in conflict with the Federal Circuit's holding in Duferco.

determinations of the Secretary (including prior scope determinations) and the Commission." Id. § 351.225(k)(1). If these criteria are dispositive of the order's scope, Commerce will issue the appropriate scope ruling. If the order's scope is still unclear, Commerce must continue and evaluate the criteria provided under section 351.225(k)(2). Here, Commerce concluded that the section 351.225(k)(1) criteria dispositively excluded parts and components from the order's scope. East Jordan now argues that Commerce erred in finding these criteria dispositive and in failing to consider the section 351.225(k)(2) criteria. The Court must now analyze whether substantial evidence supports the agency's determination that the section 351.225(k)(1) criteria are dispositive of the order's scope. See Sango Int'l L.P. v. United States, 484 F.3d 1371, 1379 (Fed. Cir. 2007).

To be dispositive, the section 351.225(k)(1) criteria "must be controlling of the scope inquiry in the sense that they definitively answer the scope question." Id. Here, the section 351.225(k)(1) criteria definitively answer the scope question. All evidence indicates that the focus of Commerce's investigations was on completed meter boxes and box sets rather than individual parts or components. For example, the initial petition explained that meter boxes are "also manufactured in sets, usually containing three pieces—a base, a straight

midsection, and a cover." This language indicates that while a

meter box set does need not to be preassembled, the set must

consist of all of the parts required to form a completed meter

box to be within the order's scope. A prior scope ruling

further supports this conclusion.[3] See Scope Ruling on the

Antidumping Duty Order on Construction Castings from the

People's Republic of China: Request by Frank J. Martin Company

(Oct. 17, 2003). In the Martin Scope Ruling, Commerce found

that "the scope does not contain language that can reasonably be

constructed to cover parts or components of 'valve, service and

meter boxes.'" Id. at 8. The Martin Scope Ruling further noted

that "including individual parts within the scope of the order

in question would impermissibly expand the terms in the order."

Id. at 7. When considered collectively, the section

351.225(k)(1) criteria definitively resolve the scope question.

Accordingly, Commerce's conclusion that AYM's imports are not

---

[3] East Jordan argues that Commerce erred in relying on the Martin Scope Ruling for several reasons. First, East Jordan objects to the validity of the Martin Scope Ruling's interpretation of the scope language. However, this argument fails as Commerce's interpretation was reasonable and the result of the proper application of the agency's interpretive process. East Jordan's argument that factual distinctions prevent Commerce from relying on the Martin Scope Ruling also fails. Factual distinctions have no bearing on the reasonableness of the agency's interpretation of the scope language. Notably, East Jordan does not dispute Commerce's factual finding that AYM's imports are meter box parts or components as opposed to a complete meter box set.

within the scope of the order is supported by substantial

evidence as its interpretation is based on a reasonable

construction of the scope language and is the result of the

proper application of the agency's regulatory interpretive

process.

**B.    Commerce Did Not Abdicate Its Administrative**
       **Responsibilities**

East Jordan also argues that Commerce abdicated its

administrative responsibility by failing to more broadly

interpret the scope language in order to prevent potential

circumvention.  This argument also lacks merit.  While Commerce

enjoys substantial freedom in conducting scope inquiries, the

agency's role is to clarify the scope of the order; not to

expand or modify it.  Eckstrom Indus. Inc. v. United States, 254

F.3d 1068, 1072 (Fed. Cir. 2001).  Additionally, a scope ruling

is not a proper mechanism for addressing circumvention concerns.

If a party is "concerned about the possibility of circumvention,

the appropriate method to resolve such concern would appear to

be proceedings under the provisions specifically designed to

prevent circumvention."  Mitsubishi Elec. Corp. v. United

States, 16 CIT 730, 739, 802 F. Supp. 455, 462-63 (1992); see

also Wheatland Tube Co. v. United States, 161 F.3d 1365, 1370

(Fed. Cir. 1998).  Adopting East Jordan's argument would lead to

the impermissible expansion of the underlying antidumping duty

order to parts and components, and East Jordan's circumvention concerns have no bearing on Commerce's reasonable interpretation of the scope language.  As such, Commerce did not act contrary to law in refusing to expand the scope of the antidumping duty order to meter and valve box parts and components.

## IV.  <u>CONCLUSION</u>

In light of the foregoing, Commerce's scope ruling is sustained.

/s/ Richard W. Goldberg
**Richard W. Goldberg**
**Senior Judge**

**Date:      May 1, 2008**
            **New York, New York**