Slip Op 10-81

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**Before**: Nicholas Tsoucalas, Senior Judge

——————————————————————————— :
                                                       :
LAMINATED WOVEN SACKS COMMITTEE,      :
COATING EXCELLENCE INTERNATIONAL, LLC :
and POLYTEX FIBERS CORPORATION,        :
                                                       :
              Plaintiffs,                    :
                                                       :
         v.                                      :
                                                       :
UNITED STATES,                              : **Consolidated**
                                                : **Court No. 09-00343**
              Defendant,                    :
                                                       :
         and                                     :
                                                       :
SHAPIRO PACKAGING and                   :
COMMERCIAL PACKAGING,                    :
                                                       :
              Defendant-Intervenors.  :
                                                       :
——————————————————————————— :

**<u>OPINION</u>**

**Held**: Plaintiffs' Motion for Judgment On the Agency Record is denied. Judgment is entered for Defendant, United States. Case is dismissed.

Dated: July 23, 2010

<u>King & Spalding, LLP</u> (<u>Joseph W. Dorn</u>, <u>Jeffrey B. Denning</u>, <u>Stephen A. Jones</u>, <u>Stephen R. Keener</u>) for Plaintiffs, Laminated Woven Sacks Committee; Coating Excellence International, LLC; and Polytex Fibers Corporation.

<u>Tony West</u>, Assistant Attorney General; <u>Jeanne E. Davidson</u>, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, <u>Reginald T. Blades, Jr.</u>, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (<u>Delisa M. Sanchez</u>); <u>Rebecca Cantu</u>, Of Counsel, Office of the Chief Counsel for Import Administration, United States Department of Commerce (<u>Evangeline D. Keenan</u>), for Defendant, the United States.

Kutak Rock LLP (Ronald M Wisla and Lizbeth R. Levinson) for Defendant-Intervenor, Shapiro Packaging.

Arent Fox LLP (John M. Gurley and Diana Dimitriuc-Quaia) for Defendant-Intervenor, Commercial Packaging.

**TSOUCALAS, Senior Judge**: This matter is before the Court on a Motion for Judgment On the Agency Record brought by Plaintiffs, Laminated Woven Sacks Committee, Coating Excellence International, LLC and Polytex Fibers Corporation (collectively "Plaintiffs" or "LWSC") pursuant to Rule 56.2 of the Rules of the United States Court of International Trade ("USCIT").

Plaintiffs challenge a determination by the United States Department of Commerce ("Commerce" or "Department") that certain products imported by Shapiro Packaging are outside the scope of antidumping and countervailing duty orders published as Notice of Antidumping Duty Order: Laminated Woven Sacks From the People's Republic of China, 73 Fed. Reg. 45,941 (Aug. 7, 2008), and Laminated Woven Sacks From the People's Republic of China: Countervailing Duty Order, 73 Fed. Reg. 45,955 (Aug. 7, 2008) (collectively the "Orders"). Emphasizing that the Orders expressly include laminated woven sacks that are "printed with three colors or more in register," Orders at 73 Fed. Reg. 45,942; 73 Fed. Reg. 45,955, and asserting that the products imported by Shapiro Packaging in fact possess three or more printed colors, Plaintiffs contend that Commerce should have reached an affirmative scope determination without resort to descriptions of the merchandise

contained in the petition or prior investigation. The administrative determination under review is <u>Final Scope Ruling: Antidumping and Countervailing Duty Orders on Laminated Woven Sacks from the People's Republic of China</u> (July 29, 2009) ("<u>Final Scope Ruling</u>"). Plaintiffs' motion is opposed by Commerce and by Defendant-Intervenors, Shapiro Packaging and Commercial Packaging, who maintain that Commerce's determination in the <u>Final Scope Ruling</u> is supported by substantial evidence and is otherwise in accordance with law, and should therefore be sustained in all respects. For the reasons set forth below, Plaintiffs' Motion for Judgment On the Agency Record is denied.

### JURISDICTION

The Court has jurisdiction over this matter pursuant to Section 516A(a)(2)(B)(vi) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(vi) (2006),[1] and 28 U.S.C. § 1581(c) (2006).

### STANDARD OF REVIEW

The Court grants "significant deference" to Commerce's scope rulings, <u>Allegheny Bradford Corp. v. United States</u>, 28 CIT 830, 842, 342 F. Supp. 2d 1172, 1183 (2004), and will uphold a given determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law," 19 U.S.C. §

---

[1] Further citations to the Tariff Act of 1930 are to the relevant provisions of Title 19 of the U.S. Code, 2006 edition.

1516a(b)(1)(B)(i). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Huaiyin Foreign Trade Corp. (30) v. United States, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). There must be a "rational connection between the facts found and the choice made" in an agency determination if it is to be characterized as supported by substantial evidence and otherwise in accordance with law. Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962). The Court "must affirm a Commission determination if it is reasonable and supported by the record as a whole, even if some evidence detracts from the Commission's conclusion." Nippon Steel Corp. v. United States, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (internal citation and quotation marks omitted).

## PROCEDURAL HISTORY

On August 7, 2008, Commerce published antidumping and countervailing duty orders covering certain laminated woven sacks from the People's Republic of China. See Orders 73 Fed. Reg. 45,941; 73 Fed. Reg. 45,955. On March 20, 2009, Defendant-Intervenor, Shapiro Packaging, requested a scope ruling on whether three different laminated woven sacks the company imported fell within the ambit of the scope language. See Letter from Garvey Schubert Barer to the Acting Secretary of Commerce, Re: Laminated Woven Sacks from the People's Republic of China; Scope Ruling

Request (Mar. 20, 2009) ("Scope Ruling Request"), Public Rec. 1, Confidential Rec. 1.[2]   The scope of the <u>Orders</u> is defined as follows:

> The merchandise covered by this investigation is laminated woven sacks. Laminated woven sacks are bags or sacks consisting of one or more plies of fabric consisting of woven polypropylene strip and/or woven polyethylene strip, regardless of the width of the strip; with or without an extrusion coating of polypropylene and/or polyethylene on one or both sides of the fabric; laminated by any method either to an exterior ply of plastic film such as biaxially-oriented polypropylene ("BOPP") or to an exterior ply of paper that is suitable for high quality print graphics; <u>printed with three colors or more in register</u>; with or without lining; whether or not closed on one end; whether or not in roll form (including sheets, lay-flat tubing, and sleeves); with or without handles; with or without special closing features; not exceeding one kilogram in weight. Laminated woven sacks are typically used for retail packaging of consumer goods such as pet foods and bird seed. . . .

73 Fed. Reg. at 45,942; 73 Fed. Reg. 45,955 (emphasis added).

In its Scope Ruling Request, Shapiro claimed that the three laminated woven sacks at issue[3] are beyond the scope of the <u>Orders</u> and therefore not subject to the antidumping or countervailing duties imposed <u>a priori</u>.  <u>See</u> Scope Ruling Request at 2, CR 1. According to Shapiro, the subject merchandise did not meet the "printed with three colors or more in register" criterion and were

---

[2] Hereinafter all documents in the public record will be designated "PR," and all documents in the confidential record designated "CR."

[3] The three laminated woven sacks imported by Shapiro include the Manna Pro Calf Manna sack; the Manna Pro Horse Feed sack; and the Red Head Deer Corn sack. <u>See</u> Compl. at 4.

in fact produced with only two colors in register.  See id. at 7.
On May 12, 2009, Plaintiffs submitted comments to the Department
contesting Shapiro's request for exclusion of the subject
merchandise from the scope of the Orders.  See Letter from King &
Spalding to the Secretary of Commerce, Re: Laminated Woven Sacks
From China: Petitioners' Reply To Shapiro Packaging's Request For
A Scope Ruling (May 12, 2009) ("Plaintiffs' Comments of May 12,
2009"), CR 2.  Additional submissions followed,[4] and on July 29,

_____

[4] On May 22, 2009, Shapiro submitted rebuttal comments. See
Letter from Garvey Schubert Barer to the Secretary of Commerce,
Re: Laminated Woven Sacks from the People's Republic of China;
Rebuttal to Petitioners' Comments on the Shapiro Scope Ruling
Request (May 22, 2009) ("Shapiro's Comments of May 22, 2009"), PR
15. On May 29, 2009, Commercial Packaging submitted rebuttal
comments in support of Shapiro's position. See Letter from Arent
Fox to the Secretary of Commerce, Re: Laminated Woven Sacks from
the People's Republic of China: Comments On Scope Ruling Request
of Shapiro Packaging (May 29, 2009) ("Commercial Packaging's
Comments of May 29, 2009"), PR 16.  On June 10, 2009, Plaintiffs
submitted rebuttal comments. See Letter from King & Spalding to
the Secretary of Commerce, Re: Laminated Woven Sacks From China:
Petitioners' Second Submission Concerning Shapiro Packaging's
Request For A Scope Ruling (June 10, 2009) ("Plaintiffs' Comments
of June 10, 2009"), PR 18. On June 15, 2009, Shapiro submitted
surrebuttal comments. See Letter from Garvey Schubert Barer to
the Secretary of Commerce, Re: Laminated Woven Sacks from the
People's Republic of China; Response to Petitioners' Second
Submission Concerning Shapiro Packaging's Request for a Scope
Ruling (June 15, 2009) ("Shapiro's Comments of June 15, 2009"),
PR 19. On June 24, 2009, Commercial Packaging submitted
surrebuttal comments. See Letter from Arent Fox to the Secretary
of Commerce, Re: Laminated Woven Sacks from the People's Republic
of China: Second Submission of Comments On The Scope Ruling
Request of Shapiro Packaging (June 24, 2009) ("Commercial
Packaging's Comments of June 24, 2009"), PR 21. Finally, on June
29, 2009, Plaintiffs submitted surrebuttal comments. See Letter
from King & Spalding to the Secretary of Commerce, Re: Laminated
Woven Sacks From China: Petitioners' Third Submission Concerning
(continued...)

2009, Commerce issued its Final Scope Ruling finding that the three laminated woven sacks identified by Shapiro were printed with only two colors in register and therefore not subject to the duties imposed by the Orders. See Final Scope Ruling.

On September 18, 2009, Plaintiffs brought the instant action contesting the results of Commerce's Final Scope Ruling. Because Commerce's determination in this matter affected the administration of both an antidumping and countervailing duty order separate actions were lodged. See Compl., Court No. 09-00343; Compl., Court No 09-00348. These two actions were subsequently consolidated, under Consolidated Court No. 09-00343, at the parties' request. See Consolidation and Scheduling Order, Docket. No. 33 (Dec. 7, 2009).

**DISCUSSION**

**I. The Scope Ruling**

After publication of an antidumping or countervailing duty order, scope rulings may be necessary to afford importers or producers clarification as to the status of their products under the order. In determining whether a product falls within the scope of an antidumping or countervailing duty order, Commerce engages in a three-step process. First, Commerce must examine the language of the order at issue. A "predicate for the interpretive process is

---

[4](...continued)
Shapiro Packaging's Request For A Scope Ruling (June 29, 2009) ("Plaintiffs' Comments of June 29, 2009"), PR 22.

language in the order that is subject to interpretation." Duferco
Steel, Inc. v. United States, 296 F.3d 1087, 1097 (Fed. Cir. 2002).
If the terms of the order are dispositive then the order governs.
See Tak Fat Trading Co. v. United States, 396 F.3d 1378, 1382 (Fed.
Cir. 2005) ("The language of the order determines the scope of an
antidumping duty order.").  Therefore, while Commerce enjoys broad
discretion in interpreting and clarifying its antidumping duty
orders, and scope orders are necessarily written in general terms,
the interpretive process cannot substitute for language in the
order.  See Duferco, 296 F.3d at 1096-97 (citing Novosteel SA v.
United States, 284 F.3d 1261, 1271 (Fed. Cir. 2002)); see also 19
C.F.R. § 351.225(a).  If the order alone is not dispositive, the
interpretive process is governed by 19 C.F.R. § 351.225(d), which
directs Commerce to determine whether it can make a ruling based
upon the application for a scope ruling and the factors listed in
section 351.225(k)(1).[5]  If these descriptions are not dispositive,

---

[5] In its entirety, section 351.225(k) reads as follows:

With respect to those scope determinations that are not
covered under paragraphs (g) through (j) of this section, in
considering whether a particular product is included within
the scope of an order or a suspended investigation, the
Secretary will take into account the following:

(1) The descriptions of the merchandise contained in the
petition, the initial investigation, and the determinations
of the Secretary (including prior scope determinations) and
the Commission.

(2) When the above criteria are not dispositive, the
(continued...)

the Department initiates a scope inquiry pursuant to 19 C.F.R. §
351.225(e), and applies the five factors codified in section
351.225(k)(2), commonly referred to as the Diversified Products
criteria. See Diversified Products Corp. v. United States, 6 CIT
155, 162, 572 F. Supp. 883, 889 (1983); see also 19 U.S.C. §
1677j(d)(1).

In the case at bar, Commerce determined that the three
laminated woven sacks at issue are not merchandise covered by the
scope of the Orders. See Final Scope Ruling at 1. The Department
based this conclusion on an analysis of the factors identified in
section 351.225(k)(1).

## II. The Color Criterion

### A. Parties' Arguments

LWSC argues that the color criterion contained in the Orders,
"printed with three colors or more in register" can only be
interpreted as to include laminated woven sacks that display three
visible colors printed with the in register process. Pls.' Mem. in
Supp. of Mot. for J. On the Agency Rec. ("Pls.' Brief") at 6.
According to Plaintiffs, the common definition of the term color,

---

[5](...continued)
Secretary will further consider:
(i) The physical characteristics of the product;
(ii) The expectations of the ultimate purchasers;
(iii) The ultimate use of the product;
(iv) The channels of trade in which the product is sold; and
(v) The manner in which the product is advertised and
displayed.

as used in the Orders, "references the visual perception of distinct colors," and does not "equate colors with inks, which are raw materials used to produce subject merchandise."[6]   See id. Plaintiffs maintain that the color criterion of the scope language is based on visible colors and not the actual use of ink colors, noting that the scope language does not include any reference to ink, ink color, or the number of inks used in the production process.  See id. at 16.   Thus, any attempt by the Department to render an interpretation of the scope language as mandating a requirement of a certain number of separate inks would have the effect of improperly modifying the scope of the Orders.  See id. at 18 (citing Duferco, 296 F.3d at 1098).  Plaintiffs characterize, as undisputed, the notion that Shapiro's imports satisfy the in register requirement embodied in the Orders.[7]  See id. at 11.  With

---

[6] Both LWSC and Shapiro rely on a standardized color matching system known as the Pantone Color Matching System. See Pls.' Brief at 16; Scope Ruling Request at 3-4. Under the Pantone Matching System, colors are distinguished by numbers which catalog a library of 1,114 colors generated through the mixture of 14 standard base pigments. See Pantone.com, http://www.pantone.com/pages/pantone/Pantone.aspx?pg=204598&ca=1 (last visited July 22, 2010).

[7] According to LWSC, merchandise is included in the scope of the Orders whenever: (1) the sack is made with one or more plies of fabric consisting of woven polypropylene and/or polyethylene strip, regardless of strip width; (2) the woven fabric is laminated to an exterior ply of plastic film such as biaxially oriented polypropylene or to an exterior ply of paper that is suitable for high quality print graphics; (3) the exterior ply is printed with three colors or more in register; and (4) the sack weighs no more than one kilogram. See Pls.' Brief at 10-11.

regard to whether the laminated woven sacks are "printed with three colors or more," LWSC insists that the appropriate standard for this assessment is the number of visual colors perceived, and not as Defendants allege, the number of inks used.

Defendant and Defendant-Intervenors, on the other hand, take the position that the laminated woven sacks are printed with only two colors in register, and therefore do not meet the physical criteria of merchandise covered by the Orders. See Def.'s Opp'n to Pls.' Mot. for J. On the Agency Rec. at 16 ("Def.'s Brief); Final Scope Ruling at 2. Commerce bases this conclusion on its assertion that the phrase "printed with three colors or more in register" should be construed as the number of inks used in the printing process rather than the number of colors visible on the sacks. See Def.'s Brief at 17. According to Shapiro, the presence of multiple colors on the subject merchandise is achieved through a screening process which gives "the appearance of multi-colors, when in fact only one or two color inks are being used." Scope Ruling Request at 4. The use of screens thus permits a variety of shades of the same color eliminating the need for multiple inks. This, according to Commerce, does not satisfy the "printed with three colors or more in register" criterion. Because the words "printed with" immediately precede "three colors or more in register," the words must be read together as a single requirement, and not as separate and independent criteria. See Def.'s Brief at 6; Commercial

Packaging's Comments of May 29, 2009 at 4-5. Thus, a "bag that is 'printed with three or more colors' is not the equivalent of a bag containing three or more printed colors." Shapiro Packaging's Comments of May 22, 2009 at 5.

As a result, Commerce insists, the color criterion of the Orders is ambiguous on its face, and therefore the agency properly elected to interpret the scope language pursuant to section 351.225(k)(1). As part of its analysis, Commerce examined submissions filed by the petitioners in the original antidumping and countervailing duty investigations. See Laminated Woven Sacks from the People's Republic of China/Petitioners' Response To The Department's July 2, 2007 Request For Clarification Of Certain Items Contained In The Petition (July 9, 2007) ("Request for Clarification"). In response to the Department's request for clarification of the term "printed with three colors or more in register" petitioners explained that:

> LWS sacks normally have four or more colors in register. Many have 6 to 8 colors in register. Petitioners intend to exclude sacks that have fewer than three colors in register, because they do not have high quality print graphics. Sacks meeting the other specifications but without graphics or printing are not LWS. The printing of multi-colored high quality print graphics is a critical element to the description of LWS, since the print on these bags typically serves as point of sale advertising on the retail shelf. Thus, the exterior ply must be printed in three colors or more in register; it must be aligned and printed at three or more separate print stations, each containing a different color, creating multicolor, high quality print graphics.

Request for Clarification at 3 (emphasis added); see also Final Scope Ruling at 13. Based upon this explanation, Commerce determined that the color criterion of the scope language included only those sacks that "were printed in register with three or more colors, at three or more separate print stations, each containing a different color." Final Scope Ruling at 13; Def.'s Brief at 11. With this as its reference, the Department further adduced that the term "color" implicated a requirement for separate colored inks printed in register at separate print stations. See Final Scope Ruling at 13; Def.'s Brief at 11.

Plaintiffs contest Commerce's decision to invoke the interpretive guidelines of section 351.225(k)(1), arguing that Commerce should have confined its analysis to the text of the scope as set forth in the Orders. See Pls.' Brief at 11-12. Because the issue can be resolved by considering only the Orders, Plaintiffs argue, Commerce is precluded from considering the other sources cited in section 351.225(k)(1). See id. at 12. Moreover, says LWSC, Commerce cannot interpret an antidumping duty order in a manner contrary to its terms. See id. (citing Duferco, 296 F.3d at 1095). Relying on the Federal Circuit's decision in Duferco, LWSC maintains that Commerce "should have first determined whether the scope language was clear on its face." Pls.' Brief at 19. If thereafter, Commerce found ambiguity in the scope language it would have been permitted to proceed to the interpretive steps of section

351.225(k)(1). Instead, "Commerce launched into an impermissible discussion of what the petitioners intended . . . without ever establishing that the scope of the Orders was unclear." Id. at 20. Therefore, Plaintiffs claim, because "Commerce was able to resolve Shapiro's scope request solely by reference to the language in the Orders, it was prohibited from looking further." Id. at 21 (citing Duferco, 296 F.3d. at 1096).

Not unexpectedly, Defendant and Defendant-Intervenors challenge Plaintiffs' interpretation of the Federal Circuit's holding in Duferco. The Department contends that "Duferco does not stand for the proposition that Commerce is required to make a finding of ambiguity before it can interpret the scope language in accordance with 19 C.F.R. § 351.225(k)(1)." Def.'s Brief at 13. To the contrary, says Defendant, there is nothing in the holding of Duferco that requires Commerce to engage in a "stepped analysis" in which it must first make an explicit determination of ambiguity. Id. at 15. Commerce distinguishes Duferco on the grounds that the issue for the Federal Circuit was whether the Department could find that "a product is within the scope of an antidumping order on the basis that there is no language in the order specifically excluding the product at issue." Id. at 13 (citing Duferco 296 F.3d at 1096-97). In fact, Duferco made clear that the petition and investigation "may provide valuable guidance as to the interpretation of the final order." Duferco, 296 F.3d at 1097.

Thus, Defendant concludes, given that the phrase "printed with three colors or more in register" is subject to interpretation, Commerce properly extended its scope analysis to those factors listed in section 351.225(k)(1). See Def.'s Brief at 15.

### B. Analysis

A common issue in scope cases is whether Commerce acted properly in determining whether a particular product is covered by an order's general terminology. Indeed, the Department's regulations themselves recognize that the agency must conduct scope determinations in the first instance because descriptions of the subject merchandise are "written in general terms." 19 C.F.R. § 351.225(a). It is important to distinguish such cases, however, from those circumstances in which an order's relevant terms are unambiguous. For, as LWSC correctly points out, Commerce cannot make a scope determination that conflicts with an order's terms, nor can it interpret an order in a way that changes the order's scope. See Duferco 296 F.3d at 1089 ("Scope orders may be interpreted as including subject merchandise only if they contain language that specifically includes the subject merchandise or may be reasonably interpreted to include it."). In the case at bar, Plaintiffs present a bifurcated scope argument. The first part consists of the claim that Commerce's decision to apply the framework of section 351.225(k)(1) in its interpretive analysis was improper – i.e., the Orders' relevant terms were unambiguous. The

second part attacks the Department's interpretation itself, arguing that the color criterion implicates the number of colors visible on the sacks not the number of inks or printing stations used in their production - i.e., the Department's interpretation altered the Orders' scope. The two parts of this argument will be addressed seriatim.

The first part of the Court's analysis is conducted under the controlling principle that Commerce need only meet a low threshold to show that it justifiably found an ambiguity in scope language. See Novosteel, 284 F.3d at 1272. While it is true that it is not justifiable to identify an ambiguity where none exists, this is simply not the case here. The description of the merchandise contained in the scope language does not establish that the laminated woven sacks at issue unambiguously fall within the purview of the Orders. As Commercial Packaging notes, if the terms "printed with;" "three colors;" and "in register" were meant as unrelated requirements of the scope language, it would make no sense to couch them in such idiomatic form ("printed with three colors or more in register"). See Commercial Packaging's Comments of May 29, 2009 at 5. Thus, the phrase "printed with three colors or more in register" cannot be read as unrelated requirements, but rather as one complete grammatical unit. To properly construe this term and discern its effect on other components of the scope language, Commerce looked to the regulatory guidelines of section

351.225(k)(1). LWSC's assertion that the Department failed to establish an ambiguity in the Orders prior to its invocation of the interpretive guidelines of section 351.225(k)(1) is flatly contradicted by the agency's declaration that:

> [T]he Department has examined the criteria set forth in its regulations under section 19 C.F.R. § 351.225(k)(1) to assist it in determining the meaning of the phrase, "printed with three colors or more in register."

Final Scope Ruling at 13 (emphasis added). Though this may not rise to the level of an explicit finding of ambiguity, none is required.[8] All that is necessary before Commerce may consider secondary documents from the original investigation is "language in the order that is subject to interpretation." Duferco, 296 F.3d at 1097. The circumstances present here are precisely those for which Commerce's interpretive regulations and the holding in Duferco both apply; to aid in the resolution of a scope issue when reference to the language in the order itself will not suffice. Mindful of the low threshold requirement needed to establish ambiguity, the Court finds that Commerce has met this standard.

The second part of Plaintiffs' scope argument that the color criterion of the Orders contemplates the visible perception of distinct colors, and not the number of inks used is similarly flawed. In seeking guidance as to the proper meaning of "printed

---

[8] LWSC concedes that there is no judicial or regulatory precedent for requiring an explicit determination of ambiguity. See Pls.' Reply Brief at 5 n.6.

with three colors or more in register," Commerce applied the interpretive process outlined in section 351.225(k)(1). In so doing, Commerce examined documents submitted during the underlying investigation. One such document directly addressed the Department's uncertainty with regard to the scope language. In the Department's Request for Clarification, Commerce specifically requested that petitioners provide further explanation of the term "printed with three colors or more in register." See Request for Clarification at 2-3. The operative portion of the petitioners' response to this question states that:

> [T]he exterior ply must be printed in three colors or more in register; it must be aligned and printed at three or more separate print stations, each containing a different color, creating multicolor, high quality print graphics.

Request for Clarification at 3. Thus, the phrase "printed with three colors or more in register" is described with greater specificity, and provides the context of petitioners' objectives in formulating the scope language. For instance, "printed with three colors or more in register" is followed by the phrase "it must be aligned and printed at three or more print stations, each containing a different color, creating multicolor, high quality print graphics." These two clauses are separated by a semicolon. A common method of interpretation holds that an ending clause or phrase applies to the last subject matter to which it is pertinent. See Sero v. New York Cent. Lines, LLC, No. 07-CV-6397-CJS, 2010 WL

2294440, at *3 (W.D.N.Y. June 4, 2010) (internal citations omitted). Likewise, use of the semicolon in this manner serves to link the two closely related independent clauses, and is indicative of the petitioners' intention that the second clause act as a modifier of the first. See John C. Hodges et al., Harbrace College Handbook 145 (12th ed. 1994). Hence, in order to adequately meet the criterion of "printed with three colors or more in register," a laminated woven sack must have been "aligned and printed at three or more separate print stations, each containing a different color." Request for Clarification at 3. This is because a printing process varying from this specification would not meet petitioners' stated goal of including, in the scope language, only those sacks with "high quality print graphics." Id. ("Petitioners intend to exclude sacks that have fewer than three colors in register, because they do not have high quality print graphics."). Although LWSC complains that the Department did not revise the scope of the Orders as a result of petitioners' comments in the Request for Clarification, "the absence of a reference to a particular product in the Petition does not necessarily indicate that the product is not subject to an order." Novosteel, 284 F.3d at 1269 (quoting Wirth Ltd. v. United States, 22 CIT 285, 294, 5 F. Supp. 2d 968, 976 (1998)).

As previously noted, Commerce enjoys substantial freedom to interpret and clarify its antidumping orders, see Duferco, 296 F.3d

at 1096-97; Novosteel, 284 F.3d at 1269, thus Plaintiffs' have failed to overcome the high burden necessary to compel a rejection of Commerce's scope interpretation. In a less technical setting LWSC's adequation of color and shade may hold some sway, but the descriptions of merchandise in antidumping and countervailing duty investigations contain nomenclature specific to both product and process. Such is the case here. Therefore, the definition of colors, in this case, is inspired by the context of the industry in which it is used - i.e., the production of laminated woven sacks with high quality print graphics.

Therefore, the Court finds, the Department's determination with respect to the color criterion is supported by substantial evidence and otherwise in accordance with law.

### III. Administration of the Orders

#### A. Parties' Arguments

LWSC complains that Commerce's interpretation of the scope language increases the likelihood of circumvention.[9] According to Plaintiffs, the requirement that the subject merchandise be printed in three or more inks at three or more print stations would impede the ability of agents from the United States Customs and Border Protection ("Customs") to properly determine a product's inclusion

---

[9] The possibility of circumvention arises when "later-developed merchandise" frustrates the collection of antidumping or countervailing duties on subject merchandise. See 19 U.S.C. § 1677j(d).

or exclusion from the Orders. This is because Customs agents "will be required to speculate on how a product was manufactured to determine whether distinct visible colors are the result of a specialized printing technique using a single ink at a single print station or another technique using multiple inks and multiple print stations." Pls.' Brief at 23. In addition, Plaintiffs resist the arguments made in favor of the Department's utilization of a certification program, arguing that past reliance on such programs has proven "burdensome" and "difficult to administer." Id. at 24 (citing Certain New Pneumatic Off-the-Road Tires From the People's Republic of China: Final Affirmative Countervailing Duty Determination and Final Negative Determination of Critical Circumstances, 73 Fed. Reg. 40,480 (July 15, 2008). Moreover, says Plaintiff, because Commerce has already declined implementation of a certification program for laminated woven sacks, the Department's scope requirement of three or more inks at separate print stations becomes all the more unreasonable. See id. at 25.

According to Commerce, the administration of these Orders "is no different than the administration of other antidumping or countervailing duty orders when the product description contains inputs that are not readily discernible by visible inspection - which Commerce and Customs already properly administer on a daily basis." Def.'s Brief at 18. Further, Commerce rejects the notion that a certification program is warranted under the present

circumstances. See Final Scope Ruling at 15. Because no party has provided any evidence to demonstrate that an importer has attempted to evade classification, under the Orders, of its imports of laminated woven sacks that would otherwise meet the criteria of the scope language, a certification program is unnecessary. See id.

### B. Analysis

LWSC's argument that Commerce somehow abdicated its responsibility by failing to interpret the scope language in such a manner as to prevent the likelihood of circumvention lacks merit. This Court has previously held that a "scope ruling is not the proper mechanism for addressing circumvention concerns." East Jordan Iron Works, Inc. v. United States, 32 CIT    ,    , 556 F. Supp. 2d 1355, 1358 (2008). The "appropriate method to resolve such [a] concern would appear to be proceedings under the provisions specifically designed to prevent circumvention." Mitsubishi Elec. Corp. v. United States, 16 CIT 730, 739, 802 F. Supp. 455, 462-63 (1992). This is because the issues of concern for the Department in a scope ruling do not address those considerations that Congress has deemed relevant in the context of circumvention. See id. An anticircumvention inquiry is a specific type of scope inquiry governed by its own statutory provision, 19 U.S.C. § 1677j(d), which codifies Commerce's administrative practice. See 19 C.F.R. § 351.225(j).

Equally unconvincing is Plaintiffs' argument that Customs

requires a certification program, attesting to the number of inks and print stations used, in order for it to properly administer Commerce's interpretation of the scope language. While use of a certification program had been proposed by Commercial Packaging, the Department rejected this proposal outright. See Final Scope Ruling at 15. Therefore, LWSC's characterization as "unreasonable," the Department's refusal to implement a certification program that LWSC itself opposes, strains logic. Pls.' Brief at 25. Moreover, like the circumvention argument LWSC advances, certification is not part of an ordinary scope analysis.

In sum, Plaintiffs' concerns that the Department's scope interpretation expands the likelihood of circumvention, and makes impracticable the proper administration of the Orders, are not valid. Commerce has other means at its disposal to protect against the potential evasion of the payment of antidumping duties. In addition, both Commerce and Customs are well-equipped to administer the Orders without the burden of implementing a certification program. Thus, LWSC has failed to overcome the "significant deference" afforded Commerce in the interpretation of its own orders. Allegheny Bradford, 28 CIT at 842, 342 F. Supp. 2d 1172, 1183. Because Commerce has articulated a satisfactory explanation for its actions including a rational connection between the facts found and the choices made, the Court is unable to reweigh the record evidence even if it so desired. See Burlington Truck

<u>Lines</u>, 371 U.S. at 168.

Accordingly, the Court finds as supported by substantial evidence and otherwise in accordance with law, Commerce's determination in the <u>Final Scope Ruling</u>.

### CONCLUSION

For the reasons set forth above, the Motion for Judgment On the Agency Record, filed by Laminated Woven Sacks Committee, is denied. Judgment shall be entered accordingly.


 /s/ Nicholas Tsoucalas
**Nicholas Tsoucalas**
**Senior Judge**




**Dated: July 23, 2010**
        **New York, New York**